[Civ. No. 13978. Third Dist. May 10, 1974.]

SAN JOAQUIN COUNTY EMPLOYEES' ASSOCIATION, INC.,
Plaintiff and Respondent, v.
COUNTY OF SAN JOAQUIN, Defendant and Appellant.

84

---

**COUNSEL**

Richard W. Dickenson, County Counsel, Robley E. George, Assistant County Counsel, and Michael N. Garrigan, Deputy County Counsel, for Defendant and Appellant.

Carroll, Burdick & McDonough and Christopher D. Burdick, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**\*—Defendant County of San Joaquin (hereinafter referred to as "County") appeals following the granting of judgment on the pleadings in favor of plaintiff San Joaquin County Employees' Association, Inc. (hereinafter referred to as "Association").

This action had its genesis in the filing of a complaint for declaratory relief by the Association seeking a determination by the court that under presently applicable statutes a public entity could lawfully agree to pay salary increases retroactive to the date of the expiration of a presently existing salary ordinance or resolution, that such retroactive payment would not constitute a gift of public funds, and that the court further decree that defendant County must meet and confer with plaintiff Association as to such retroactive salary increases in accordance with the provisions of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.).

County's legal position is that there is no statutory authority for the payment of retroactive salary increases; that such payments are constitutionally prohibited as gifts of public money for services already rendered and paid for; that in view of the illegality of such payments no purpose would be served by meeting and conferring with the Association as to retroactive salary increases.

Preliminary to our discussion of the applicable law, no questions of fact being present, we note that plaintiff Association is a duly recognized bargaining representative of County's employees with respect to their employee-employer relations. As had been the previous custom, the Association entered into negotiations with County on about March 1, 1972. In this instance it interjected the demand that County "meet and confer in good faith" on the question of retroactive pay raises. The County for the reasons we have previously set forth refused to do so.

Both parties sought judgment upon the pleadings. The Association prevailed and County was ordered to "meet and confer" with the Association on the subject of retroactive pay raises, the court finding that County could lawfully do so, the trial court in the judgment stating: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

"1. That an agreement between the County of San Joaquin, and a duly recognized employee organization representing any of the employees of said

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

County to pay retroactive pay increases to said employees for services to be performed at a time when wage and salary rates are not fixed and are indefinite, said payment to be retroactive to the date on which said pay became unfixed or indefinite through expiration of the previously existing contract, memorandum of understanding, or salary plan or ordinance, is permitted by law and is within the authority of the Board of Supervisors under the provisions of Article XI Section 5 of the California Constitution. Such an agreement is not prohibited as being the payment of extra compensation under Article IV Section 17 of the California Constitution or as being a gift of public funds under Article XIII Section 25 of the California Constitution; . . ."

■ While the trial court's opinion quoted above stresses the constitutional and statutory aspects of this case, we believe that the case should first be viewed in the larger context of its relationship to the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.), with which act this litigation is inextricably involved. That act, first adopted in 1961 and amended many times since, by its terms endeavored to create a method whereby disputes regarding "wages, hours, and other terms and conditions of employment" (Gov. Code, § 3500) could be resolved, a method which was at the same time both viable and voluntary. Therefore we are constrained to interpret the act in such a manner as to create no hypertechnical impediment to either its viability or its voluntariness within the state constitutional framework.

We think it obvious that the act has drawn liberally from the experiences of private management-labor relations. Certainly the effective date of negotiated wage settlements is almost an invariable item in negotiations, and we further believe it is an accurate statement that pay raises are frequently backdated to the date of the expiration of the last contract. The Legislature, in recognition of the fact that public agencies unlike private concerns are faced with statutory budget deadlines (Aug. 30 in the case of counties, Gov. Code, § 29088), amended section 3505 of the Government Code in 1971 by adding the italicized language. Section 3505: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.

" 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer . . . *promptly upon request by either party and continue* for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation *prior to the adoption by the public agency of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation or ordinance, or when such procedures are utilized by mutual consent.*"

We add that as a practical matter salary ordinances cannot be adopted until the budget is fixed.

We think it is an almost universal custom for governmental agencies to do as was done in this case to adopt their salary ordinances at the start of the fiscal year, July 1. Here the Legislature has selected the budgetary date rather than the fiscal year date as the target date for reaching an agreement negotiated between governmental agencies and employee organizations. It is wholly illogical to believe that it was intended that governmental agencies should adopt interim salary ordinances, greatly increasing accounting and other problems, for the period July 1 to August 31. We think the more logical interpretation is that the Legislature contemplated that any pay adjustments negotiated would be made retroactive to July 1, the pay of employees continuing in the interim on the previous year's schedule, just as would be the case with private labor-management agreements.

It is an incontestable fact of governmental employment practices that governmental agencies must compete in the labor market with non-governmental employers. Such competition includes not only salaries but sick leave time, vacations and numerous other conditions of employment. It has been, for instance, a judicially noticeable practice of governmental agencies to correlate vacation time allowed to the years of service by an employee. Yet when such employee was first employed by the governmental agency, no such provision existed in his employment contract. Yet we are not aware of any successful challenge to the granting of additional vacation time in recognition of extended employment as being a gift of public money. Nor are we unmindful of the fact that governmental agencies almost universally pay all or a portion of an employee's medical insurance premiums although his original employment did not provide for such a gratuity. We cite these examples only to show that in the area of employment, public agencies must compete, and if to so compete they grant bene-

fits to employees for past services, they are not making a gift of public money but are taking self-serving steps to further the governmental agency's self-interest in recruiting the most competent employees in a highly competitive market.

In summary upon this point, we believe that the entire import of the Meyers-Milias-Brown Act is to permit as much flexibility in employee-governmental agency relations with regard to all aspects in the employer-employee milieu as a voluntary system will permit. To achieve this flexibility, the element of retroactivity is a necessary ingredient not only as to salaries but as to insurance, seniority, and a myriad of other potential points of conflict. We hold that the interpretation here sought is clearly within the contemplation of the Meyers-Milias-Brown Act.

Neither of County's twin defenses that retroactive pay is unconstitutional and also in excess of the board of supervisor's power can be sustained.

On the issue of whether retroactive pay raises are unconstitutional per se, there is a paucity of case law but the subject has been the focal point of several Attorney General opinions. These opinions were not rendered as esoteric discussions of legal philosophies. Rather they were answers given to inquiring governmental agencies confronted with the day-to-day operation of government and are therefore to be given weight as being contemporaneous administrative interpretations. (*Mantzoros* v. *State Bd. of Equalization* (1948) 87 Cal.App.2d 140 [196 P.2d 657]; 3 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1825.) These opinions (23 Ops. Cal.Atty.Gen. 271; 33, p. 143; 39, p. 200; 47, p. 61) hold that the granting of retroactive pay raises under the circumstances recited therein did not constitute a violation of either article XIII, section 25 (forbidding gifts of public funds) or article IV, section 17 (forbidding extra compensation for past services) of the California Constitution. The Attorney General opinions rely upon the fact that in each instance the adjusted salary rates were made retroactive to a date at which the salary rates were indefinite and subject to future determination.

We have previously in our earlier discussion of the Meyers-Milias-Brown Act pointed out a similar situation. While negotiations are going on between Association and County, the question of salaries and other matters relating to employer-employee relationships remain undetermined. County's board of supervisors has the power to deny pay raises. The Meyers-Milias-Brown Act does not compel a governmental agency's governing body to adopt any agreement reached between the respective negotiators for the

governmental agency and the representative employee organization. The power to deny such retroactive pay raises, however, does not compel the conclusion that the County (through its board of supervisors) does not have the power to grant such raises under existing laws. County was required to bargain in good faith. If in so bargaining County reached the conclusion that pay raises should be retroactive to the expiration date of the last salary ordinance, good faith required it to implement the results of negotiations beween itself and the Association by making pay raises retroactive to such date.

■ County's second and most vigorously asserted argument is that apart from constitutional considerations there is no specific statutory authority for retroactive salary changes as is contained in Government Code section 18850 with regard to state civil service employees. County contends that such specific statutory authorization is here required. Government Code section 18850 states in part: "The board [State Personnel Board] may make a change in salary range retroactive to the date of application for such change."

The constitutional authorization for the setting of county employees' salaries by the board of supervisors is found in article XI, section 1, of the California Constitution, which reads in part as follows: "The Legislature shall provide for county powers and an elected governing body in each county. . . . The governing body shall provide for the number, compensation, tenure, and appointment of employees."

In amplification of the above grant of power, Government Code section 23003 provides: "A county is a body corporate and politic, has the powers specified in this title, and such others necessarily implied from those expressed." Government Code section 25207 provides: "The board may do and perform all other acts and things required by law not enumerated in this part, or which are necessary to the full discharge of the duties of the legislative authority of the county government."

Entirely apart from the provisions of the Meyers-Milias-Brown Act, the above-quoted constitutional and statutory grants of power do not carry with them any limitations of power so as to deprive the board of supervisors of wide latitude in carrying out the duties mandated upon them by the Legislature. The county is a political subdivision of the state. It would seem strange indeed if the state could permit retroactive pay raises under the conditions stipulated in Government Code section 18850 to state employees and deny them to county employees. Nor do we believe any such result was intended or created by the Legislature.

We make a parallel observation with regard to the provisions in Education Code section 13602.5, which states: "If the governing board of a school district cannot comply with the provisions of subdivision (a) of Section 13602 because it is engaged in a study, which was commenced prior to the commencement of the school year, to increase the salaries and wages of persons employed by such district in positions not requiring certification qualifications, the board may, by appropriate action taken prior to the final adoption of its budget, do either of the following:

"(a) Adopt an interim salary schedule which shall be the same schedule as for the preceding year, except that increases may be granted at that time based upon increased cost-of-living indexes, and provide that the salaries and wages fixed as a result of the study shall be payable for the entire school year to include the period thereof in which the study was conducted and final board action taken.

"(b) Provide that the salaries and wages fixed as a result of the study shall be effective only for that portion of the school year, as determined by the board at the time it takes action after the study has been completed. 'Portion of the school year,' as used in this subdivision shall not be for any period of time less than the period of time remaining in the school year from the date the governing board adopts the salary schedule based on the study commenced prior to that school year."

If retroactivity of salary adjustments is a proper legislative consideration for state employees and certain educational employees, no discernible reason appears why it would not be a proper subject for negotiations pursuant to the Meyers-Milias-Brown Act. Indeed, governing bodies are mandated by Government Code section 3505 to "meet and confer in good faith" regarding wages, hours and other terms and conditions of employment with representatives of such recognized employee organizations.

We decide that the judgment of the court under the pleadings herein correctly determined that under the facts as alleged, no prohibition exists against the payment of retroactive salaries, and that defendant County has a duty to meet and confer in good faith with plaintiff Association on the issue of retroactive pay raises.

The judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.