DEPARTMENT OF ADMINISTRATION, Petitioner-Appellant,
v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent.

Supreme Court

*No. 77-049. Argued May 29, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 150.)

For the appellant there were briefs by *Robert K. Steuer, Scott B. Fleming* and *Weiss, Steuer, Berzowski & Kriger of* Milwaukee, and oral argument by *Mr. Fleming.*

For respondent Wisconsin Employment Relations Commission the cause was argued by *John D. Niemisto,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For respondent Wisconsin State Employees Union, AFSCME, Council 24, AFL–CIO there were briefs by

*Richard V. Graylow, Karin Goldsmith* and *Lawton &amp; Cates* of Madison, and oral argument by *Mr. Graylow.*

CONNOR T. HANSEN, J. AFSCME, Council 24, Wisconsin State Employees Union, AFL–CIO (hereinafter the Union) represents several bargaining units of state employees. State employee collective bargaining agreements generally cover a 24-month period from July 1st to June 30th of the second year. The June 30th termination date coincides with the end of the state fiscal year and biennial budget period. Previous agreements have provided that as of June 30th all obligations are automatically cancelled unless the parties have mutually agreed to extend the contract terms past the termination date.

The dispute at issue here arose during negotiations between the Union and the State Department of Administration (hereinafter the appellant) in 1974. Apparently these negotiations began before the June 30th termination date. They continued until a tentative agreement was reached on August 30, 1974. This agreement was subsequently ratified by the legislative committee on September 12, 1974, and signed by the Governor on November 21, 1974.

Throughout these and other negotiations the Union contended that the parties could agree to a contract effective date which would be earlier than the date of legislative and executive approval. By bargaining on the effective date of the contract the Union could secure wage increases retroactive to the date of the tentative agreement or even to the expiration date of the old agreement. The appellant, however, took the position that the contract effective date could not be considered a subject of bargaining because retroactive wage increases were prohibited by Art. IV, section 26, of the Wisconsin Constitution, which provides that the legis-

lature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered on the contract entered into.

The Union petitioned the Wisconsin Employment Relations Commission (hereinafter WERC) for a declaratory ruling on the applicability of Art. IV, section 26, Wisconsin Constitution. Following a hearing WERC issued the following order:

"1. Article IV, Section 26, Wisconsin Constitution does not prohibit retroactive application of negotiated wage rates and/or other subjects of economic import.

"2. The effective date of a collective bargaining agreement, including its retroactive applications, is a mandatory subject of collective bargaining over which the Petitioner has the right to bargain, and the State has the duty to bargain within the meaning of Sections 111.81(2), 111.82 and 111.91 of the State Employment Labor Relations Act."

The Appellant petitioned for review in the Dane county circuit court. The circuit court entered judgment affirming the order of the WERC and this appeal is taken from that judgment.

The issues presented on this appeal are:

1. Whether Art. IV, section 26, of the Wisconsin Constitution prohibits the retroactive application of state employees' negotiated wage rates?

2. Whether the effective date of a state employees' collective bargaining agreement is a mandatory subject of bargaining?

The general rule is that the construction and interpretation of a statute adopted by the administrative agency charged by the legislature with the duty of applying it is entitled to great weight. *Beloit Education Asso. v. WERC,* 73 Wis.2d 43, 67, 242 N.W.2d 231

(1976). However, in *Beloit,* this court said that where the question is very nearly one of first impression the court is not bound by the agency's interpretation, but that it will be considered in determining " 'what the appropriate construction should be.' " *Id.* at 68, quoting *Milwaukee v. WERC,* 71 Wis.2d 709, 714, 239 N.W.2d 63 (1976).

The appellant contends that Art. IV, section 26, of the Wisconsin Constitution prohibits the payment of retroactive wages which result from the negotiation of a collective bargaining agreement. This section of the Constitution provides in part:

". . . The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; . . ."

The wages paid during the period of negotiation were based upon those provided in the previously expired contract. Therefore, argues the appellant, retroactive payment of wages established by the new contract represents extra compensation for services after they have been performed.

There is no constitutional right of state employees to bargain collectively. This right exists by virtue of the State Employment Labor Relations Act (SELRA) as set forth in secs. 111.80 to 111.97, Stats. When enacting this legislation, the legislature set forth a declaration of policy. Sec. 111.80. This declaration makes some significant and important policy determinations. It declares there are three major interests involved in collective bargaining in state employment: that of the public; that of the state employee; and that of the state as an employer. The legislature has further declared that orderly and constructive employment relations for state employees and the efficient administration of state

government promote all of these interests. It also recognizes that neither party involved in collective bargaining in state employment has any right to engage in acts or practices which jeopardize the public safety and interfere with the effective conduct of public business. The policy declarations set forth in sec. 111.80, are important in considering the resolution of this issue.

The constitutional provision here under consideration does not prohibit payment of wages after services have been performed. In fact, as we understand it, most all state payroll payments are made after the work is performed. The issue is what constitutes extra compensation. This court first considered this question in *State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 193 N.W. 499 (1923), where the question was whether a teacher's annuity could include funds attributable to years of service prior to the enactment of the annuity plan. This court held that such funds were not intended as compensation for past years of service, but rather represented an attempt to induce experienced teachers to continue to work.

We recognize that the retroactive wage increase sought here would constitute compensation for services that had already been performed. However, as previously stated, the issue is whether such payments constitute extra compensation within the prohibition of the Constitution. In *State ex rel. Thomson v. Giessel,* 262 Wis. 51, 53 N.W.2d 726 (1952) (hereinafter *Giessel I*) this court held that extra compensation was compensation paid in addition to that previously agreed upon. The court said the purpose of section 26 was to limit contractors with the state to the precise compensation fixed by their contracts. In *Giessel I* the court held that a statute which granted retired teachers an additional annuity payment each month violated the constitutional provision because it granted extra compensation not only after the contract

was entered into, but also after the contract was performed. This holding prompted the legislature to rework an annuity plan to grant an additional $25 each month to those retired teachers who would make themselves available for substitute teaching. In *State ex rel. Thomson v. Giessel,* 265 Wis. 558, 61 N.W.2d 903 (1953), this court held the revised plan constitutional because the payments represented an inducement to secure substitute teachers and not compensation for past services. This section of the constitution has since been amended to modify its provisions as they relate to retirement benefits.

The appellant advances several arguments purporting to demonstrate that there is in fact an interim compensation agreement between the state and the Union. Thus, argues the appellant, there is a compensation agreement between the parties as to wages to be paid during what the parties describe as the hiatus period between the expiration of the old collective bargaining agreement and the execution of a new agreement. We are not persuaded by any of the arguments advanced.

Relying on *St. Francis Hospital v. Wisconsin E. R. Board,* 8 Wis.2d 308, 98 N.W.2d 909 (1959), the appellant contends there is an interim wage agreement because that case holds that employer is not bargaining in good faith if it unilaterally increases wages during the period of contract negotiations. The fact that the law requires the parties to maintain the status quo during the period of contract negotiations does not mean that the parties have agreed to a contractual wage agreement for the hiatus period. We believe it would be illogical to conclude that the law requires the parties to adopt an interim wage agreement when that is one of the overriding issues in collective bargaining negotiations. The retroactive wage adjustment, whether it be up or down, is a necessary ingredient of such negotiations.

The adjusted wage rates can properly be retroactive to the date when the wages became indefinite as a result of the expiration of the old contract and thus became subject to future determination by the execution of a new contract.

Appellant also finds an interim compensation plan in the provision of sec. 16.084(2), Stats. (now sec. 230.10, Stats. 1977):

"*230.10* **Compensation plan coverage.** *(1)* Except as provided under sub. (2), the compensation plan provisions of s. 230.12 apply to all employes of the classified service, unless they are covered by a collective bargaining agreement under subch. V of ch. 111.

"*(2)* The compensation plan in effect at the time that a representative is certified for a collective bargaining unit shall constitute the compensation plan for employes in the certified bargaining unit until a collective bargaining agreement becomes effective for that unit. *If a collective bargaining agreement expires prior to the effective date of a subsequent agreement, and a representative continues to be certified to represent employes in that collective bargaining unit, the wage rates of the employes in such a certified bargaining unit shall be frozen until a subsequent agreement becomes effective,* and employes in such a certified bargaining unit shall not be covered by the compensation plan under s. 230.12." (Emphasis added.)

The explanatory note contained in Senate Bill 480, the draft of the statute, states:

"EXPLANATORY NOTE: This proposal primarily clarifies s. 16.084(2) to ensure that it cannot be construed that the Director's plan is automatically 'activated' for represented employes when they are 'working without a contract'. This will preclude situations like those raised in the past where it was contended that the current language provides for automatic activation of the Director's plan if the bargaining unit does not reach agreement with the state on a new contract. . . ."

In our opinion the language of the statute, together with the legislative history, clearly indicates that the purpose of this statute is to prevent employees working under a collective bargaining agreement from claiming wages under the compensation plan set forth in sec. 230.12, Stats., after their collective agreement expires.

Although a number of states have constitutional provisions similar to Art. IV, section 26,[1] so far as we can ascertain, only one state has considered the application of this provision to collective bargaining. In *San Joaquin Cty. Emp. Ass'n, Inc. v. County of San Joaquin,* 39 Cal. App.3d 83, 113 Cal. Rptr. 912 (1974), the California Court of Appeals held that competition in the labor market required that governmental employers be free to negotiate retroactive benefits. The court also held that the extra compensation clause did not prohibit retroactive salary adjustments to a date on which salary rates were indefinite and subject to future determination. This decision was cited as precedent in two subsequent cases, *Gai v. Fresno City Council,* 63 Cal. App.3d 381, 133 Cal. Rptr. 753 (1976), and *Goleta Educators Ass'n. v. Dall' Armi,* 68 Cal. App.3d 830, 137 Cal. Rptr. 324 (1977).

SELRA is an effort by the legislature to create a method whereby disputes concerning wages, hours and conditions of employment can be resolved within the framework of the state constitution and in a manner so as to create no hypertechnical impediment to either the viability or voluntariness of collective bargaining. In doing so the Act declares that neither party "has any right to engage in acts or practices which jeopardize the public safety and interest and interfere with the effective conduct of public business." This can only be

[1] *See:* F. J. Stimson, *The Law of Federal and State Constitutions of U. S.,* sec. 214 n. 4 p. 208 (1908).

accomplished by maintaining the continuity of the employment relationship during the period of time when employees are working without a contract.

■ Here the Union attempted to have the wage rates made retroactive to the date at which they became indefinite by the expiration of the old contract and subject to future determination by a new collective bargaining contract. If the effective date of newly negotiated wage rates is not negotiable, the state would, in effect, have the unilateral power to set the effective date of any agreement. Such an interpretation of the statute would, in our opinion, contravene the expressed purposes of the SELRA. The freezing or fixing of wage rates during the hiatus period does not mean that parties have agreed, in a contractual sense, to a level of pay.

Art. IV, section 26, is a proscription against extra compensation or pay for wages previously agreed upon. State employees are expected to maintain services to the citizens of the state during negotiations and the state is obligated to maintain the previously existing wage schedule during the hiatus period. This status quo concept during this period is not predicated on any agreement regarding the ultimate level of compensation which results from the negotiations.

■ We conclude that Art. IV, section 26, does not prohibit recognizing a retroactive wage adjustment which is negotiated by collective bargaining and is applied only to the period of time when the employee is working without a contract.

The appellant also argues that the retroactive application of a collective bargaining agreement is not a mandatory subject of collective bargaining over which the state has the duty to bargain within the meaning of the State Employment Labor Relations Act.

Section 111.91(1), Stats., provides:

". . . Matters subject to collective bargaining to the point of impasse are wage rates, as related to general salary scheduled adjustments consistent with sub. (2), and salary adjustments upon temporary assignment of employes to duties of a higher classification or downward reallocations of an employe's position; fringe benefits; hours and conditions of employment, . . ."

Although the legislature has carefully drawn distinctions between state-employee relations and private management-labor relations, we think it is obvious that the Act has drawn liberally from the experience of private labor-management relations. However, in arguing that the effective date of a state employees' collective bargaining agreement is not the subject of mandatory collective bargaining, the appellant endeavors to make certain distinctions between the public and private sector. In doing so the appellant relies primarily on sec. 111.96 (3), Stats., which provides:

". . . Notwithstanding any other provision of the statutes, all compensation adjustments for state employes shall be effective on the beginning date of the pay period nearest the statutory or administrative date."

It is argued that it is the intent of this statute that the effective date of the contract be determined with reference to the date of legislative approval, which in this case was approximately three months after the expiration of the prior contract. We are of the opinion that sec. 111.96(3), Stats. is a purely administrative provision necessary to avoid disruption of payroll processing when the effective date of the contract does not correspond to the varying state payroll schedules. The use of the word *nearest* actually permits a retroactive increase where, for example, the increase is approved on the tenth day of a month-long pay period. If the legislature had intended this section to prohibit nego-

tiation of a retroactive contract effective date it would have to be phrased much more carefully. Nowhere in the Act is there a provision as to when a collective bargaining agreement becomes effective.

Our attention is also directed to three additional sections of the Act which the appellant claims prohibit retroactive wage increases. First, sec. 111.92(2), Stats.:

*"(2)* No portion of any tentative agreement shall become effective separately."

Next, appellant relies on sec. 111.92(3), Stats.:

*"(3)* Agreements shall coincide with the fiscal year or biennium."

Finally, sec. 111.92(4), Stats.,

*"(4)* It is the declared intention under this subchapter that the negotiation of collective bargaining agreements and their approval by the parties should coincide with the overall fiscal planning and processes of the state."

As we read these statutes none of them prohibit retroactive wage increases covering the period when the employees are working without a collective bargaining agreement. The effective date of a collective bargaining agreement has been considered an appropriate subject of bargaining in other public sector cases.[2] The effective date of a wage increase is a matter directly concerned with the amount of wages paid. Further, a contract effective date does not involve matters primarily of employer policy or management rights such that it would not be a subject suitable for collective bargaining. *Beloit, supra,* at 54, 67; *Unified S. D. No. 1 of Racine County v. WERC,* 81 Wis.2d 89, 95, 96, 259 N.W.2d 724 (1977).

---

[2] *See, e.g., Philadelphia Federation of Teachers, Local No. 3, AFT, AFL–CIO v. Board of Education of School District of Phila-*delphia, 458 Pa. 342, 327 Atl.2d 47, 51 (1974); *Town of New Canaan v. Connecticut State Board of Labor Relations,* 160 Conn. 285, 278 Atl.2d 761 (1971).

We conclude that the effective date of a collective bargaining agreement is directly related to wages and is therefore a proper subject of mandatory collective bargaining under the provisions of the State Employment Labor Relations Act.

*By the Court.*—Judgment affirmed.