Allen H. BENCE, William L. Brown, Edward F. Canning, William C. Crane, John Dotski, Russell H. Dunn, Milton A. Engbring, John Hodel, Ferdinand J. Meyer, Emil F. Milo, Frank Nawrocki, Joseph M. O'-Donnell, Raymond P. Raths, Lawrence Venghaus, Richard H. Wissmueller, Harold F. Zemlicka, George Muehlbauer, Stanley A. Korbar, Clarence G. Krueger, Myron R. Ratkowski, Mary Rowe, Ruth Merkwae, Vladimir V. Barak, John Balcerak, Raymond Bednarek, Erwin Drake, Chester R. Esch, Clara Evenson, Leona E. Gerstenberger, Kurt Guttowski and Lyle W. Kohn, Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, a municipal corporation, and Policemen's Annuity & Benefit Fund, Defendant-Appellants-Petitioners. [Case No. 80–1815.]

Supreme Court

*No. 80–1815. Argued March 30, 1982.—Decided June 2, 1982.*

(Also reported in 320 N.W.2d 199.)

John W. ZILAVY, Special Administrator of the Estate of John J. Zilavy; Ray S. Agne, Elmer Baral, et al., Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, a municipal corporation, and The Retirement Board of the Policemen's Annuity &

Benefit Fund of Milwaukee, Defendants-Appellants. [Case No. 81–1574.]

Supreme Court

*No. 81–1574. Submitted on briefs April 1, 1982.—Decided June 2, 1982.*

(Also reported in 320 N.W.2d 199.)

For the defendants-petitioners the cause was argued by *Michael A. I. Whitcomb,* assistant city attorney, with whom on the briefs were *James B. Brennan,* city attorney and *Thomas E. Hayes,* deputy city attorney. [Case No. 80–1815.]

For the plaintiffs-respondents there was a brief and oral argument by *Robert Arthur Melin* of *Schroeder, Gedlen, Riester & Melin,* of Milwaukee, [Case No. 80–1815.]

For the defendants-appellants the cause was submitted on the briefs of *James B. Brennan,* city attorney, *Thomas E. Hayes,* deputy city attorney, and *Michael A. I. Whitcomb,* assistant city attorney. [Case No. 81–1574.]

For the plaintiffs-respondents the cause was submitted on a joint brief of *Thomas P. Solheim, Robert W. Mc-Lewee,* and *Ross & Stevens, S.C.,* of Madison; and *Fricker, Bailey & Sayas* of Milwaukee. [Case No. 81–1574.]

DAY, J. These cases involve decisions by two trial courts and the court of appeals which held certain provisions of charter ordinances of the city of Milwaukee to be unconstitutional in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Case No. 80–1815 is before us on review of a decision of the court of appeals, published at 103 Wis. 2d 679, 309 N.W.2d 883 (Ct. App. 1981), which affirmed a judgment of the circuit court for Milwaukee county, Hon. Leander J. Foley, Jr., Judge.

Case No. 81–1574 is before us by grant of a petition to bypass the court of appeals, made on behalf of defendants-appellants, from an order of the circuit court for Milwaukee county, Hon. John E. McCormick, Judge.

The main issue in these cases is whether an ordinance incorporating the terms of a collective bargaining agreement entered into by the city of Milwaukee (hereinafter the City) and the Professional Policemen's Protective Association (hereinafter the Union) is unconstitutional on equal protection grounds because it provides for greater pension benefits for employees who retired after a certain date than are accorded employees who retired prior to that date. We hold that there is a rational basis for the ordinances and reverse the decisions of the courts which held portions of the ordinances unconstitutional.

These cases involve challenges to two city of Milwaukee charter ordinances, each of which incorporated terms of a collective bargaining agreement entered into by the City and the Union. The challenged provisions pertain to the calculation of pension benefits. Defendant, Policemen's Annuity and Benefit Fund (hereinafter P.A. & B.F.), which was established by the city of Milwaukee, administers two pension systems, one for police officers who entered service prior to May 17, 1945, and another for police officers who entered service between May 17, 1945 and July 29, 1947. Police officers entering service after July 29, 1947, are under a separately administered pension system.

Both cases involve collective bargaining agreements reached after the beginning of the period covered by

the respective agreements. This is not uncommon and retroactivity of provisions in such agreements is a way of life in collective bargaining. This court approved retroactive pay increases to state employees in *Dept. of Administration v. WERC*, 90 Wis. 2d 426, 280 N.W.2d 150 (1979). Subsequently, in *Berns v. Wisconsin Employment Relations Comm.*, 99 Wis. 2d 252, 299 N.W.2d 248 (1980), this court held that a fair share agreement governing municipal employment could be made retroactive, stating:

"The [Wisconsin Employment Relations] Commission recognized that retroactivity is a way of life in labor negotiations. We, too, have recognized this concept." 99 Wis. 2d at 266.

In this case the retroactivity involves the date of increases in pension benefits: *Zilavy* back to the beginning of the contract period; in *Bence* to a date within the contract period. Neither, in our opinion, violates the constitutional rights of any of the plaintiffs in either case. The specific facts of each case are as follows.

## CASE NO. 81–1574

The parties in *Zilavy v. City of Milwaukee* stipulated as to the facts of the case. All of the plaintiffs began service with the Milwaukee Police Department prior to May 17, 1945, and retired prior to January 1, 1971. Charter Ordinance No. 378 of the city of Milwaukee, which was passed by the common council on January 8, 1972, and approved by the mayor of the city of Milwaukee on January 26, 1972, became effective on April 1, 1972. It amended the formula for conferring benefits under the P.A. & B.F. so as to increase the pension benefits accorded officers who began service prior to May 17, 1945, and retired on or after January 1, 1971.

Officers who began service prior to May 17, 1945, and retired before January 1, 1971, were entitled to pensions equal to fifty percent of their last annual salary. Pursuant to Charter Ordinance 378, officers who began service prior to May 17, 1945, and retired on or after January 1, 1971, were entitled to pensions equal to fifty percent of their last annual salary plus an additional two percent for each year of service in excess of twenty-five years, limited to ten years of additional service. This additional two percent per year increase was based upon the average of the three highest years' salary prior to retirement. This ordinance codified provisions of a collective bargaining agreement entered into by the City and the Union which covered the collective bargaining period of January 1, 1971, through November 3, 1972.

Because the increase in pension benefits applied only to officers who retired on or after January 1, 1971, it did not accrue to the benefit of the plaintiffs in this case, who had retired and were not on the force or members of the collective bargaining unit at the beginning of the contract period. Since the increase covered persons retiring after January 1, 1971, even though the ordinance did not take effect until April 1, 1972, the increased benefits did accrue to five officers who had retired prior to the effective date of the ordinance. Plaintiffs commenced an action for declaratory relief alleging that the ordinance was unconstitutional and void because:

". . . [I]t creates an arbitrary and unreasonable classification which has resulted in arbitrary and unfair treatment to plaintiff and members of his class and has failed to provide equal protection of the laws to plaintiff and all members of his class."

The City demurred to the complaint. The trial court overruled the demurrer. The City appealed to this court,

which affirmed the order of the trial court in *Zilavy v. City of Milwaukee,* 86 Wis. 2d 757, 271 N.W.2d 894 (1978) (unpublished per curiam opinion) and remanded the case to the trial court. Plaintiffs filed an amended complaint which individually listed the members of the class of plaintiffs and also sought an award for past benefits dating from January 1, 1971. The parties stipulated as to the facts of the case.

The trial court issued a memorandum decision in favor of plaintiffs, ruling that the classification contained in the ordinance, which granted increased benefits to officers who retired after January 1, 1971, but made no mention of officers who retired before that date, was "arbitrary, capricious and unreasonable" and therefore unconstitutional. The trial court ruled that Part Two of the ordinance which limited the benefit increase to employees retiring after January 1, 1971, was unconstitutional. The trial court severed Part Two from the ordinance and retroactively granted a benefit increase to the plaintiffs.

The City filed a notice of appeal and petitioned this court to bypass the court of appeals. We granted that petition and ordered that the case be consolidated with Case No. 80–1815, *Bence v. City of Milwaukee,* for the purposes of review.

## CASE NO. 80–1815

The facts in *Bence v. City of Milwaukee,* as set forth in the findings of fact issued by the trial court, based on a stipulation of the parties, are as follows.

All of the plaintiffs entered service with the Police Department between May 17, 1945 and July 29, 1947, and retired prior to October 5, 1973. Of the thirty-one plaintiffs in *Bence,* nine were part of the collective bargaining unit at the beginning of the contract period,

November 4, 1972.[1] Charter Ordinance 410, which was adopted by the Milwaukee Common Council and signed by the mayor on February 12, 1974, became effective on April 21, 1974. It amended the formula for conferring pension benefits under the P.A. & B.F. so as to increase the benefits accorded persons who entered service between May 17, 1945, and July 29, 1947, and retired on or after October 5, 1973. Those officers' pensions were based upon their highest annual salary, while officers who entered service between May 17, 1945 and July 29, 1947, but retired prior to October 5, 1973, had their pension based upon the average of their last three years' salary. This ordinance incorporated the terms of an arbitrator's award accepted by the City and the Union which resolved an impasse in collective bargaining between the City and the Union over the contract governing the period from November 4, 1972, through November 2, 1974.

Because the plaintiffs all retired prior to October 5, 1973, the increase in pension benefits contained in Charter Ordinance 410 did not accrue to them. The increase in pension benefits did accrue to five officers who had retired prior to April 21, 1974, the effective date of the ordinance, but after October 5, 1973, the date the benefit increase went into effect. Plaintiffs commenced an action in Milwaukee County Circuit Court seeking a declaration that Charter Ordinance 410 was unconstitutional as violating the equal protection and due process clauses of the United States and Wisconsin Constitutions. The City filed a demurrer to the complaint

[1] The court of appeals erroneously stated that all of the plaintiffs in *Bence* were members of the collective bargaining unit at the inception of the contract period. *Bence,* 103 Wis. 2d at 681. However, the findings of fact by the trial court reveal that twenty-two of the *Bence* plaintiffs had retired prior to November 4, 1972.

which was overruled by the trial court. The City appealed that order, and in *Bence v. City of Milwaukee*, 84 Wis. 2d 224, 267 N.W.2d 25 (1978), this court affirmed the order of the trial court and remanded the case for further proceedings.

The case was submitted to the trial court on briefs and stipulated facts. The trial court ruled that the language in the ordinance which limited the increase in benefits ". . . for policemen [persons] presently employed on or after October 5, 1973" was unconstitutional and entered judgment retroactively awarding the increased benefits to plaintiffs. The City appealed to the court of appeals, which affirmed the trial court decision in *Bence v. Milwaukee*, 103 Wis. 2d 679, 309 N.W.2d 883 (Ct. App. 1981). The City petitioned this court for review. We granted that petition and consolidated the case with *Zilavy v. City of Milwaukee*.

As a preliminary matter, we hold that the plaintiffs in these actions have standing to challenge the constitutionality of the charter ordinances. The City argues that plaintiffs do not have standing because upon their retirement they became beneficiaries rather than members of the P.A. & B.F. and therefore had no legally protectable right to any increase in benefits which took effect after their retirement.[2]

This court has held that the law of standing in Wisconsin should not be construed narrowly or restrictively. *Wisconsin's Environmental Decade, Inc. v. PSC*, 69 Wis. 2d 1, 13, 230 N.W.2d 243 (1975). In *Duke Power Co. v. Carolina Env. Study Group, Inc.*, 438 U.S. 59, 72 (1978), the United States Supreme Court discussed the question of standing to sue as follows:

---

[2] The City concedes that the plaintiffs would have standing to challenge any decrease in benefits from that which they became entitled to upon their retirement.

"The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v. Carr*, 369 U.S. 186, 204 (1962). As refined by subsequent reformulation, this requirement of a 'personal stake' has come to be understood to require not only a 'distinct and palpable injury,' to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975), but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977). See also *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) ; *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)."

Plaintiffs in these actions clearly have a personal stake in the outcome of the actions. In *Zilavy*, an affidavit was submitted by the secretary of the P.A. & B.F. calculating the amount of increased benefit which would accrue to each individual plaintiff as a result of the trial court's decision that the increase in pension benefits authorized by Charter Ordinance No. 378 applied to persons who retired prior to January 1, 1971. In *Bence*, a judgment was issued on behalf of the individual plaintiffs the sum to which each of them was entitled by virtue of the trial court order that the pension benefit increase authorized by Charter Ordinance 410 be applied to the plaintiffs. The judgments in both of those cases declared that the plaintiffs' future pension benefits should reflect the increases authorized by the charter ordinances.

This court has held that a person does not have standing to challenge the "unequal protection afforded to members of a class unless he is a member of that class." *Moedern v. McGinnis*, 70 Wis. 2d 1056, 1063, 236 N.W.2d 240 (1975). However, the position of the plaintiffs in

these actions is that the ordinances, both of which went into effect after the effective dates for increased benefits, accorded unequal protection to members of the class consisting of those persons who had retired at the time the ordinances went into effect. We hold that the plaintiffs in these two actions having standing to challenge the constitutionality of the ordinances.

In the recent case of *State ex rel. Grand Bazaar v. Milwaukee,* 105 Wis. 2d 203, 208–09, 313 N.W.2d 805 (1981), this court set forth the standard of review of constitutional challenges to municipal ordinances.

"It is the basic maxim of statutory construction that ordinances, like statutes, enjoy a presumption of validity . . . . Consequently, the party challenging an ordinance bears the frequently insurmountable task of demonstrating beyond a reasonable doubt that the ordinance possesses no rational basis to any legitimate municipal objective . . . . 'When faced with a challenge to a legislative classification under the rational-basis test, the court should ask, first, what the purposes of the statute are, and, second, whether the classification is rationally related to achievement of those purposes.' " (Citations omitted.)

*See also, Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370, 293 N.W.2d 504 (1980).

We therefore first inquire into the purposes of Charter Ordinances 378 and 410. Both of these ordinances enacted into law provisions of collective bargaining agreements entered into between the City and the Union. The collective bargaining agreements were both arrived at pursuant to the procedure set forth in the Municipal Employment Relations Act, secs. 111.70 through 111.77, Stats.

The collective bargaining process in *Zilavy* was governed by provisions of sec. 111.70, Stats. 1969, which provides for fact finding by a representative of the em-

ployment relations commission when the parties negotiating a municipal employment agreement are unable to reach a settlement.[3] The Union and the City adopted

[3] The pertinent provisions of sec. 111.70, Stats. 1969, are as follows:

"111.70 **Municipal employment.** (1) DEFINITIONS. When used in this section: . . .

"(c) 'Commission' means the employment relations commission. ". . .

"(4) POWERS OF THE COMMISSION. The commission shall be governed by the following provisions relating to bargaining in municipal employment: . . .

"(e) *Fact finding.* Fact finding may be initiated in the following circumstances: 1. If after a reasonable period of negotiation the parties are deadlocked, either party or the parties jointly may initiate fact finding; 2. Where an employer or union fails or refuses to meet and negotiate in good faith at reasonable times in a bona fide effort to arrive at a settlement.

"(f) *Same.* Upon receipt of a petition to initiate fact findings, the commission shall make an investigation and determine whether or not the condition set forth in par. (e) 1 or 2 has been met and shall certify the results of said investigation. If the certification requires that fact finding be initiated, the commission shall appoint from a list established by the commission a qualified disinterested person or 3-member panel when jointly requested by the parties, to function as a fact finder.

"(g) *Same.* The fact finder may establish dates and places of hearing which shall be where feasible in the jurisdiction of the municipality involved, and shall conduct said hearings pursuant to rules established by the commission. Upon request, the commission shall issue subpoenas for hearings conducted by the fact finder. The fact finder may administer oaths. Upon completion of the hearings, the fact finder shall make written findings of fact and recommendations for solution of the dispute and shall cause the same to be served on the municipal employer and the union. . . .

"(j) *Personnel relations in law enforcement.* In any case in which a majority of the members of a police or sheriff or county traffic officer department shall petition the governing body for changes or improvements in the wages, hours or working conditions and designates a representative which may be one of the petitioners or otherwise, the procedures in pars. (e) to (g) shall apply. Such representative may be required by the commission to post a cash bond in an amount determined by the commission to guarantee payment of one-half of the costs of fact finding."

the findings and recommendations of the fact finder and incorporated them in the collective bargaining agreement. To become effective, the provisions in the agreement pertaining to pension benefits had to be enacted as a charter ordinance, pursuant to sec. 66.01, Stats. 1969. *See* ch. 704, sec. 3, Laws of 1951; *State ex rel. Brelsford v. Retirement Board*, 41 Wis. 2d 77, 163 N.W. 2d 153 (1968). Pursuant to sec. 66.01(5), the charter ordinance could not take effect until sixty days after its passage and publication.[4]

The collective bargaining process in *Bence* was governed by sec. 111.70, Stats. 1971, which provided for binding arbitration if the parties could not reach an agreement.[5] The Union and the City incorporated the

[4] "66.01  **Home rule, manner of exercise.** . . . (5) Any city or village by charter ordinance may make the election mentioned in sub. (4) of this section, or enact, amend or repeal the whole or any part of its charter; but such ordinance shall not take effect until 60 days after its passage and publication."

[5] "111.70  **Municipal employment.** . . . (4) POWERS OF THE COMMISSION.  The commission shall be governed by the following provisions relating to bargaining in municipal employment in addition to other powers and duties provided in this subchapter: . . .

"(jm) *Binding arbitration. Milwaukee.* This paragraph shall apply only to members of a police department employed by cities of the 1st class. If the representative of members of the police department, as determined under par. (j), and representatives of the city reach an impasse on the terms of the agreement, the dispute shall be resolved in the following manner:

"1. Either the representative of the members of the police department or the representative of the city may petition the commission for appointment of an arbitrator to determine the terms of the agreement relating to the wages, hours and working conditions of the members of the police department, within the meaning of par. (j).

"2. The commission shall conduct a hearing on the petition, and upon a determination that the parties have reached an impasse on matters relating to wages, hours and conditions of employment on which there is no mutual agreement, the commission shall appoint

decision of the arbitrator into their collective bargaining agreement. The provisions of the agreement were then required to be incorporated into a charter ordinance under the same conditions as applied in *Zilavy*.

an arbitrator to determine those terms of the agreement on which there is no mutual agreement. The commission may appoint any person it deems qualified, except that the arbitrator may not be a resident of the city which is party to the dispute.

"3. Within 14 days of his appointment, the arbitrator shall conduct a hearing to determine the terms of the agreement relating to wages, hours and working conditions. The arbitrator may subpoena witnesses at the request of either party or on his own motion. All testimony shall be given under oath. The arbitrator shall take judicial notice of all economic and social data presented by the parties which is relevant to the wages, hours and working conditions of the police department members. The other party shall have an opportunity to examine and respond to such data. The rules of evidence applicable to a contested case, as defined in s. 227.01 (2), shall apply to the hearing before the arbitrator.

"4. In determining those terms of the agreement on which there is no mutual agreement and on which the parties have negotiated to impasse, as determined by the commission, the arbitrator, without restriction because of enumeration, shall have the power to:

"a. Set all items of compensation, including base wages, longevity pay, health, accident and disability insurance programs, pension programs, including amount of pension, relative contributions, and all eligibility conditions, . . . .

"8. Within 30 days after the close of the hearing, the arbitrator shall issue a written decision determining the terms of the agreement between the parties which were not the subject of mutual agreement and on which the parties negotiated in good faith to impasse, as determined by the commission, and which were the subject of the hearing under this paragraph. The arbitrator shall state reasons for each determination. Each proposition or fact accepted by the arbitrator must be established by a preponderance of the evidence.

"9. Subject to subds. 11 and 12, within 14 days of the arbitrator's decision, the parties shall reduce to writing the total agreement composed of those items mutually agreed to between the parties and the determinations of the arbitrator. The document shall be signed by the arbitrator and the parties, unless either party seeks judicial review of the determination pursuant to subd. 11."

The collective bargaining process, and manner of effectuating the agreement, are extensively regulated by statute. The pensions were arrived at according to the procedure mandated by sec. 111.70, Stats. These provisions were then enacted as charter ordinances, as required by the law of this state, and those charter ordinances went into effect according to the provisions of sec. 66.01.

Section 111.70 (6), Stats. 1971, sets forth a declaration of the policy underlying the Municipal Employment Relations Act.

"111.70 **Municipal employment . . . .** (6) DECLARATION OF POLICY. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employes so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter."

The purpose of the ordinances is to effectuate the provisions of collective bargaining agreements entered into by the City and the Union and to provide certain pension benefits. Harmonious labor relations are a valid public purpose insofar as an equal protection challenge is concerned. *Dane County v. McManus,* 55 Wis. 2d 413, 426–27, 198 N.W.2d 667 (1972). Provision of pension benefits is also a valid public purpose, particularly when determined pursuant to a collective bargaining procedure. *State ex rel. Singer v. Boos,* 44 Wis. 2d 374, 383–85, 171 N.W.2d 307 (1969). We therefore hold that Charter Ordinances 378 and 410 serve valid public purposes.

We next inquire into whether the classifications contained in the ordinances are rationally related to the purposes of maintaining harmonious labor relations and providing pension benefits. The test for reviewing equal protection challenges to classification schemes is contained in *Laufenberg v. Cosmetology Examining Board,* 87 Wis. 2d 175, 182, 274 N.W.2d 618 (1979).

"(1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only. It must not be so constituted as to preclude addition to the numbers included within a class; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation."

*See also, State ex rel. Grand Bazaar,* 105 Wis. 2d at 215.

Plaintiffs in both of these actions argue, and the courts below have held, that the classifications contained in Charter Ordinances 378 and 410 fail to comport with this five-part test. We disagree. Upon application of the test to the classification contained in the ordinances we find that the classification is rationally related to the purposes of the ordinances.

## I. THE CLASSIFICATIONS ARE BASED UPON SUBSTANTIAL DISTINCTIONS.

Charter Ordinance 378 classified employees for the purpose of pension benefits according to whether they had retired before, or on or after, January 1, 1971. This date marked the commencement of the contract period covered by the agreement implemented by the ordinance. A classification based upon whether an employee was

employed during the term of a particular collective bargaining contract is a substantial distinction.

Charter Ordinance 410 classified employees according to whether they had retired before, or on or after, October 5, 1973. This date appears to have its genesis in the memorandum of understanding between the City and the Union which stated:

"For purposes of construction and interpretation of the various provisions this agreement shall be considered to have been executed on October 5, 1973."

A classification based upon whether an employe was employed on the date that the collective bargaining agreement was executed is a substantial distinction.

## II. THE CLASSIFICATIONS ARE GERMANE TO THE PURPOSES OF THE ORDINANCES.

Where the purpose of an ordinance is to enact into law the provisions of a collective bargaining agreement, in order to facilitate harmonious labor relations and provide pensions, classifications based upon the inception date of the contract period or the execution date of the contract are clearly germane to the purpose of the ordinance.

## III. THE CLASSIFICATION MUST NOT BE BASED UPON EXISTING CIRCUMSTANCES ONLY. IT MUST NOT BE SO CONSTITUTED AS TO PRECLUDE ADDITION TO THE NUMBERS INVOLVED WITHIN A CLASS.

The classifications are not based upon existing circumstances only, but rather classify according to an employee's status as of the date that the contract pe-

riod began, in *Zilavy,* and, in *Bence,* the execution date of the contract. Both of these dates were prior to the enactment of the ordinance. The ordinance classifies according to whether an officer has retired before a certain date relating to a collective bargaining agreement.

The "based on existing circumstances only" criterion has been applied by this court to invalidate classifications as a denial of equal protection where the classification appeared to be designed to protect certain parties from competition by outsiders. *See, State ex rel. Grand Bazaar,* 105 Wis. 2d at 216–17, in which this court, quoting from *State ex rel. Ford Hopkins Co. v. Mayor,* 226 Wis. 215, 224, 276 N.W. 311 (1937), stated:

" '. . . Unless a statute is curative or remedial, and therefore temporary, the classification must not be based on existing conditions only, but provision must be made for future acquisitions to the class as other subjects acquire the characteristics which form the basis of the classification. This principle is of considerable importance when attempts are made to draw distinctions based on time, putting in one class all the instances existing on a designated date, and placing all others in another class. Under certain circumstances, where such a procedure would discriminate unwarrantably in favor of establishments, things or persons existing, or engaged in particular occupations on a given date, the courts have held that the classification is in denial of the equal protection of the laws.' " (*quoting* 6 R.C.L. Sec. 378 at 386).

The classifications contained in the ordinances, while determined by a person's employment status on a date pertaining to the collective bargaining period, do not discriminate unwarrantably in favor of persons existing or engaged in an occupation as of a certain date. In *United States Railroad Retirement Board v. Fritz,* 449

U.S. 166, 178–79 (1980), the United States Supreme Court held that a statute providing retirement benefits for railroad employees was constitutional despite the fact that it conferred lower benefits on employees who retired before the effective date of the act than were accorded those who were still in service as of that date. The United States Supreme Court has held that it does not violate equal protection to classify employees according to retirement date for the purpose of pension benefits. We agree.

## IV. *THE LAW APPLIES EQUALLY TO EACH MEMBER OF THE CLASS.*

All persons within each of the classes created by the ordinances are treated equally for the purposes of pension benefit calculation.

## V. *THE CHARACTERISTICS OF EACH CLASS ARE SO FAR DIFFERENT FROM THOSE OF OTHER CLASSES AS TO REASONABLY SUGGEST THE PROPRIETY OF SUBSTANTIALLY DIFFERENT LEGISLATION.*

The classifications contained in the ordinance, which are based upon employment as of the contract inception date in *Zilavy* and the contract execution date in *Bence,* reflect substantially different characteristics of the members of each class. In *Zilavy,* members of one class were employed on the date on which the period of the contract began, and members of the other class were not. The common characteristic of being employed during the period covered by the contract is a significant one in light of the purpose of the ordinance, which was to enact into law provisions of that contract. Differentiating between employees employed during the period of

the contract and others is also clearly pertinent to the goal of harmonious labor relations which underlies laws pertaining to municipal employment relations. It would create utter chaos in collective bargaining if this court were to rule that retired employees are still members of the bargaining unit for purposes of pension negotiations.

Similarly, the members of the classes in *Bence* are distinguished from each other by virtue of their employment status as of the execution date of the agreement. For the same reason that the difference between members of the classes at issue in *Zilavy* is a substantial one, we hold that there is a substantial difference among the members of the classes at issue in *Bence*.

The nine plaintiffs in *Bence* who were members of the bargaining unit at the beginning of the contract period but had retired before October 5, 1973, are in no different position than they would be if wage increases had been granted every two months during the course of the contract period and they had quit before the period was over. They could hardly be heard to complain that they did not get the wage increases granted after they left. So too, the members who were no longer part of the collective bargaining unit on October 5, 1973, cannot complain that they were denied pension increases which were granted after that date. It was for the arbitrator to determine when the particular benefit should start.

The plaintiffs who were not members of the bargaining unit when the contract period commenced are in the same position as the plaintiffs in *Zilavy*.

Consistent with the above analysis, we conclude that Charter Ordinances 378 and 410 do not unconstitutionally violate plaintiffs' right to equal protection of the laws. Our conclusion is supported by the recent decision of the United States Supreme Court in *Fritz*, 449 U.S. 166 (1980). In that case the court held that pension benefit changes enacted by Congress in the Railroad Retirement

Act of 1974 did not violate the constitutional guarantee of equal protection of the laws contained in the Fifth Amendment to the United States Constitution, even though the changes actually diminished the benefits to which certain persons were entitled. The court upheld the cutback in benefits for previous retirees even though the act provided for a simultaneous increase in pension benefits for current employees. While the issue of disturbing vested pension benefit rights is not before us in this case, and we explicitly do not rule on it, the *Fritz* decision clearly supports the constitutionality of classifying employees according to employment as of a certain date for pension benefit purposes.

Plaintiffs in *Bence* argued to the trial court that the classification contained in Charter Ordinance 410 constituted a denial of their constitutional right to procedural due process because they were not represented in the contract negotiations culminating in the arbitrator's award enacted into law by the ordinance. There is no requirement in Wisconsin law that former employees or retired employees are entitled to be "represented" in the negotiations between present employees, represented by their union, and the City. The trial court and the court of appeals did not reach the due process issue. We hold that Charter Ordinance 410 did not violate plaintiffs' rights to due process.

Section 111.70(1)(a), Stats. 1971, defines "municipal employe" as "any individual *employed* by a municipal employer." (Emphasis added.) Plaintiffs in *Bence* were no longer employed as of the execution date of the agreement. Plaintiffs do not suggest, nor have we found any authority to support the proposition that all of the benefits arrived at through a collective bargain process accrue to all employees who worked during any part of the contract period. Certainly a wage increase which

was to go into effect in the middle of a contract period would not have to be provided to an employee who worked during part of the contract period, but terminated his employment before the effective date of that increase.

The United States Supreme Court recognized the problems inherent in including retired employees in a collective bargaining unit in *Allied Chemical & Alkali Workers of America v. Pittsburg Plate Glass Co.*, 404 U.S. 157, 173 (1971):

"Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, the risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits."

The fact that all of the plaintiffs in *Zilavy* and the majority of plaintiffs in *Bence* were not represented in the contract negotiations does not amount to a constitutional denial of procedural due process.

Because of our decision that the ordinances are not unconstitutional, we need not reach other issues raised by the parties which are predicated upon a holding that the ordinances violated plaintiffs' constitutional rights, entitling them to relief.

*By the Court—Case No. 80–1815.* The decision of the court of appeals is reversed and the cause remanded to the trial court with directions to issue a declaratory judgment that Charter Ordinance 410 does not violate plaintiffs' constitutional rights.

*Case No. 81–1574.* The decision and order of the trial court is reversed and the cause remanded with directions

to issue a declaratory judgment that Charter Ordinance 378 does not violate plaintiffs' constitutional rights.

CALLOW and CECI, JJ., took no part.