**286**

ILLINOIS HEALTH CARE
ASSOCIATION, et al.,
Plaintiffs–Appellants,

v.

ILLINOIS DEPARTMENT OF PUBLIC
HEALTH, and Bernard J. Turnock, in
his capacity as Director of the Illinois
Department of Public Health, Defen-
dants–Appellees.

No. 88–2486.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1989.
Decided July 18, 1989.

A. Benjamin Goldgar, James J. Casey,
Jeanine M. Jiganti, Keck, Mahin & Cate,
Chicago, Ill., Steven Nardulli, Bruce Strat-
ton, Stratton, Dobbs, Nardulli & Lestikow,
Springfield, Ill., Thomas J. Reed, Chicago,
Ill., for Illinois Health Care Ass'n, Heritage
Enterprises, Inc., Heritage Manor Nursing
& Convalescent Home of Peru, Parks Me-
morial Convalescent Center, Inc. and Lewis
Memorial Christian Village, Inc.

Ann Plunkett Sheldon, Office of · the
Atty. Gen., Chicago, Ill., Stanley L. Morris,
Pfeifer & Kelty, Springfield, Ill., for Illinois
Dept. of Public Health and Bernard J. Tur-
nock.

Before CUDAHY and KANNE,
Circuit Judges, and ESCHBACH,
Senior Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiff Illinois Health Care Association
(the "IHCA"), an association of nursing
homes operating in Illinois, and three of its
member homes [1] commenced this equal pro-
tection action under 42 U.S.C. section 1983
challenging the constitutionality of the ex-
emption of hospital-based long-term care
units from the Nursing Home Care Reform
Act, Ill.Rev.Stat. ch. 111½, ¶¶ 4151–101 *et
seq.* Defendants moved to dismiss the
complaint, their motion was granted and
plaintiffs appeal. We affirm.

---

1. The individual nursing home plaintiffs include
Heritage Enterprises, Inc., d/b/a Heritage Man-
or Nursing & Convalescent Home of Peru;
Parks Memorial Convalescent Center, Inc.; and

Lewis Memorial Christian Village, Inc. We
shall refer to the plaintiffs collectively as
"IHCA."

## I.

Plaintiff IHCA, an Illinois not-for-profit corporation, is an association of 279 nursing homes and long-term health care facilities operated in Illinois. These facilities provide medical, rehabilitative and other care to the infirm, chronically ill and elderly. IHCA members comprise corporations, partnerships and sole proprietors licensed by the State of Illinois to operate as long-term care facilities under the Nursing Home Care Reform Act of 1979 (the "Act"), Ill.Rev.Stat. ch. 111½, ¶¶ 4151–101 *et seq.* As licensed operators of long-term care facilities, IHCA members are subject to the comprehensive regulatory scheme established by the Act and the regulations promulgated under it by the defendant Illinois Department of Public Health (the "IDPH"). The IDPH is the state agency responsible for the inspection, evaluation and certification of long-term care facilities as defined in the Act. *See* Ill.Rev.Stat. ch. 127, ¶ 55.40.

The Act and its concomitant regulations provide an extensive regulatory regime, establishing standards for the treatment and care of residents in long-term care facilities. The legislation directs covered nursing home operators to ensure that various specified residents' rights involving matters such as privacy, management of financial affairs, inspection of records, discharge and transfer are protected.[2] Section 4151–113 of the Act defines a covered "facility" or "long-term care facility" as any "private home, institution, building, residence, or any other place ... which provides ... personal care, sheltered care or nursing for 3 or more persons, not related to the applicant or owner by blood or marriage." Subsection (2) specifically excludes from coverage a

> hospital, sanitarium, or other institution whose principal activity or business is the diagnosis, care, and treatment of human illness through the maintenance and operation as organized facilities therefor, which is required to be licensed under the "Hospital Licensing Act", ....

Ill.Rev.Stat. ch. 111½, ¶ 4151–113(2).[3]

The IHCA instituted this civil rights suit against the IDPH and its director, Turnock, challenging the defendants' interpretation of section 4151–113 to exclude all hospital-based long-term care units or facilities from coverage under the Act. The IHCA's complaint alleges that the statutory exemption, as interpreted by the IDPH, deprives the plaintiffs of equal protection under the fourteenth amendment by placing them at a competitive disadvantage vis-a-vis hospital-based long-term care units, which, plaintiffs submit, are virtually nursing homes set up within the physical confines of a hospital. *See* Complaint of Plaintiffs ¶ 14 at 5. Further, the IHCA asserts that the defendants' interpretation and application of the Act irrationally discriminates against individuals residing in hospital-based long-term care units by denying them fundamental rights and protections secured by the Act. The IHCA seeks a declaration

---

**2.** Nursing home facilities are required, *inter alia*, to afford residents their basic constitutional rights (section 2–101); to permit residents to manage their own financial affairs (section 2–102); to allow residents to inspect their records (section 2–104(c)); and to ensure privacy in residents' medical and personal care (section 2–105). In addition to safeguarding personal rights of residents, the Act imposes affirmative responsibilities on nursing home operators. For instance, a written contract must be executed between a facility and each resident (section 2–202); a facility must protect residents' personal property (section 2–103); a facility must establish residents' advisory councils (section 2–203); and a facility must provide written notice and, if requested, a hearing, prior to implementing a transfer (sections 3–401, 3–410). Finally, the Act establishes extensive licensing and enforcement provisions, according the IDPH broad powers to respond to deficiencies in the provision of long-term care. The IDPH may sanction a facility that violates the Act or regulations, for example, by imposing a correction plan (section 3–303), forbidding the admission of new residents (section 3–304), seeking a civil or criminal penalty (sections 3–305, 3–318), and/or suspending or revoking a facility's license (section 3–415).

**3.** The Act prescribes additional exemptions for facilities subject to other regulatory schemes, including facilities covered by the "Child Care Act of 1969," the "Community Living Facilities Licensing Act," the "Community Residential Alternatives Licensing Act," and any facility operated by the federal government or the State of Illinois. *See id.*

that the exemption as applied to hospital-based long-term care units or facilities is unconstitutional and an injunction enjoining the defendants from continuing to exempt hospital-based long-term care units from regulation under the Act.

The defendants filed a motion to dismiss the plaintiffs' complaint based on lack of standing, sovereign immunity and failure to state a claim upon which relief can be granted. Notwithstanding the magistrate's recommendation to deny the defendants' motion, the district court determined that IHCA's complaint failed to state a claim upon which relief can be granted and accordingly entered a dismissal pursuant to Rule 12(b)(6). We affirm.

## II.

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, we, of course, accept as true all well-pleaded factual allegations and inferences reasonably drawn from them. *See Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The IHCA contends that the district court erred in prematurely dismissing its claim challenging on equal protection grounds the constitutionality of the defendants' interpretation and application of the Act's hospital exemption.

■ The IHCA's argument begins with the unexceptionable proposition that the equal protection clause requires that all similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In evaluating the constitutionality of any specific legislation or regulatory scheme, the appropriate standard of review is critical to the determination. *See Griffin High School v. Illinois High School Association*, 822 F.2d 671, 674 (7th Cir.1987). Unless the challenged statute or rule implicates a suspect classification or a fundamental right, the only question is whether the rule or statute is rationally related to a legitimate state interest. *See Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 490 (7th Cir.1988) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)). The classification under attack in this case involves an allegedly underinclusive statute that exempts hospital-based long-term care units from the extensive regulation imposed on nursing home facilities, which are purported to be similarly situated. The IHCA does not persuade us that this classification is in any way "suspect." Nor does the regulation impinge on any fundamental rights of the nursing homes. *See People v. Gurell*, 98 Ill.2d 194, 204, 74 Ill.Dec. 516, 520, 456 N.E.2d 18, 22 (1983) (the right to operate a nursing home is not a fundamental right guaranteed by the Constitution).[4] Therefore, the district court correctly reviewed the legislation in question employing a rational basis analysis.

The rational basis test is applied quite deferentially by courts reviewing social and

---

**4.** IHCA proposes, without much elaboration, that we apply heightened judicial scrutiny in this case because the residents at hospital-based long-term care facilities are being denied fundamental rights protected under the Act. Assuming *arguendo* that the IHCA has third-party standing to assert the rights of hospital patients, the IHCA has failed to elucidate clearly how the *state* has deprived hospital residents of a *constitutionally cognizable* fundamental right. *Cf. Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989) (involuntary confinement and improper medical treatment by a private hospital is not state action under the due process clause) (en banc). Even assuming the involvement of state action, the IHCA does not maintain that hospital resi-

dents are currently being deprived of reasonably adequate treatment or care. *Cf. Youngberg v. Romeo*, 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982); *Fialkowski v. Greenwich Home for Children, Inc.*, 683 F.Supp. 103, 105 (E.D.Pa.1987). In essence, the IHCA contends that hospital patients have a fundamental right to benefit from the comprehensive regulations promulgated pursuant to the Nursing Home Reform Act. But the IHCA presents no authority or persuasive argument supporting this curious proposition, which we accordingly reject. Absent the implication of any constitutionally protected fundamental right (or suspect classification), heightened scrutiny is indisputably inappropriate.

economic legislation. Courts may not arrogate to themselves the prerogative of the legislature in addressing social and economic matters. Rather, "[i]f the court can hypothesize plausible reasons for legislation that are within the legitimate goals of a government, nothing else is required to validate the governmental classification and it does not matter whether the reasons advanced actually motivated the legislative action." *Evans v. City of Chicago*, 873 F.2d 1007, 1016 (7th Cir.1989) (citing *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980)). In the area of social and economic regulation, "it is only invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *City of New Orleans v. Dukes*, 427 U.S. at 303–04, 96 S.Ct. at 2516–17 (citing *Ferguson v. Skrupa*, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963)). Moreover, a legislature may adopt laws which "only partially ameliorate a perceived evil and defer complete elimination of the evil to future regulations." *Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955)). As this court recently clarified in *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486:

> Legislative bodies are presumed to have acted constitutionally, even in the absence of an express policy favoring the enactment of a law. The state or municipal interest is presumed to be legitimate. Accordingly, a classification need not be justified by the government; rather, ... the party challenging the ordinance has the burden of demonstrating that no conceivable legitimate public interest is furthered by the classification.

*Id.* at 490 (citing *Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 465, 101 S.Ct. 715, 724, 66 L.Ed.2d 659; *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171; *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739).

■ The IHCA contends that the exemption of hospital-based long-term care units is irrational because hospitals and nursing homes provide virtually identical services to patients requiring long-term care and, hence, should be subjected to the same comprehensive regulatory scheme. The district court rejected this position of the IHCA and concluded,

> to the contrary, we find that it is entirely plausible that the legislature did not find it necessary to include hospital-based units for the simple reason that the hospitals themselves are subject to an entirely separate regulatory regime. *See, e.g.*, Ill.Rev.Stat. ch. 111½, ¶ 142 *et seq.* ["The Hospital Licensing Act"]. The legislature could rationally conclude that it was unnecessary to subject these hospital-based units to double regulation.

*Illinois Health Care Association v. Illinois Department of Public Health*, No. 86–3315, mem. op. at 6 (Feb. 26, 1988).

The IHCA insists that the state has failed to articulate any rational basis supporting this purportedly discriminatory classification and, therefore, that the district court erred in dismissing this case on the mere conjecture that it is "entirely plausible" that the legislature did not want to subject hospitals to double regulation. According to the IHCA, such an assumption is not supported by the Act's legislative history, which reflects an intent to reform *in toto* the regulatory framework applicable to long-term care facilities irrespective of physical location. The legislative history does not indicate an intent to exclude hospital-based long-term care units already subject to separate regulation. As this court has previously commented, however,

> [t]he absence of an articulated purpose for the classification does not prevent this court from considering purposes suggested by counsel or the court itself.... We agree that courts must be "careful not to attribute to the legislature purposes which it cannot reasonably be understood to have entertained," [citation omitted], but they should also be reluctant to strike down legislation which would clearly be constitutional if the leg-

islature had merely taken the trouble to articulate its purposes more clearly. *Sklar v. Byrne*, 727 F.2d 633, 641 (7th Cir.1984) (affirming Rule 12(b)(6) dismissal for failure to state an equal protection claim).

The IHCA cannot argue that the comprehensive regulation of nursing homes by the Act as written fails to serve a conceivably legitimate public interest. Indeed, the IHCA concedes that the Act provides a system for maintaining the basic rights of those in need of long-term care, and, through the applicable licensure and inspection procedures, ensures that these facilities meet statutory and regulatory requirements. While acknowledging that the Act is an appropriate exercise of regulatory power, the IHCA complains that the state did not go far enough in pursuit of its salutary objectives because, as interpreted by the defendants, it irrationally excluded hospital-based long-term care from coverage. We agree with the district court that the legislature could have rationally concluded that it was unnecessary to include hospital-based units under the Act since hospitals are already subject to an entirely different regulatory scheme under the Hospital Licensing Act. The "plausibility" of this rationale is fortified by the legislature's decision to prescribe additional exclusions for facilities already governed by separate regulatory schemes.[5] We invoked this precise reasoning in *Oriental Health Spa*. There we rejected the plaintiffs' equal protection challenge to a city ordinance regulating massage parlors and stated that "the City's decision to exempt certain licensed practitioners, *i.e.*, hospitals, ... appears reasonably grounded on the belief that the exempted practitioners are regulated through other means and are less likely to threaten the City's interest." 864 F.2d at 492. Moreover, "[w]e are guided by the familiar principle that a statute is not invalid under the Constitution because it might have gone further than it did." *City of New Orleans v. Dukes*, 427 U.S. 297, 305, 96 S.Ct. 2513, 2517–18, 49 L.Ed.2d 511 (quoting *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed. 2d 828).

In *People v. Gurell*, 98 Ill.2d 194, 74 Ill.Dec. 516, 456 N.E.2d 18 (1983), the Illinois Supreme Court rejected a similar equal protection challenge to the Nursing Home Care Reform Act. In *Gurell*, nursing home operators, who had been charged with violating the Act, argued that the limited application of the Act to private nursing homes, and the correlative exemption of state-owned facilities, violated the equal protection clause. In concluding that this exemption had a rational basis, the court reasoned:

[T]he legislature chose to deal with the problems it perceived in the nursing-home industry one step at a time by regulating private facilities. Legislative classifications need not be faultless. The State need only have a reasonable basis for the classification. [citations omitted.]. The State has pointed out in its brief that State-operated facilities are under the direct control of the State and that most of these facilities are regulated by statutes other than the one in question. Thus, whereas the State has no means of controlling the operation of privately owned facilities other than through the statute in question, it does have direct control over the operation of State-owned facilities without the aid of the statute now under consideration. The urgent need of the legislation would properly be perceived by the legislature to be in the private nursing home area and not in the area of institutions operated by the State. There exists, therefore, a rational basis for focusing the application of this statute on privately owned and operated nursing homes and attacking the problem first in that area, where the legislature perceived the greatest need to be.

*Id.* at 205–06, 74 Ill.Dec. at 521, 456 N.E.2d at 23. *See also Oriental Health Spa*, 864 F.2d at 491 ("[I]t is immaterial that there may have been another possible means of accomplishing the City's purpose or that it may not completely accomplish the intended end. Instead, 'reform may take one

5. *See supra* note 3.

step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" (quoting *Vaden v. Village of Maywood*, 809 F.2d 361, 365 (7th Cir.), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987))).

We find this reasoning relevant and persuasive here. Evidently, the legislature perceived the problems of long-term care to be more acute and visible in the private nursing home sector than in the hospital context where facilities are already subject to extensive regulation under the Hospital Licensing Act. The IHCA asserts that a comparison of the two acts reveals no overlap in coverage of matters peculiar to long-term care. Hence, the IHCA maintains, since regulation under the Hospital Licensing Act addresses wholly different matters than the instant legislation, the hospital legislation does not provide a rational basis for the classification at issue here.[6] While the regulations promulgated under the Nursing Home Reform Act may be considerably more onerous, detailed and comprehensive than those mandated by the Hospital Licensing Act,[7] "that is beside the point. As long as the chosen scheme rationally 'advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.'" *Oriental Health Spa*, 864 F.2d at 492 (quoting *Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981)). *See also Evans v. City of Chicago*, 873 F.2d 1007, 1017 (the government's lack of symmetry in its policy does not constitute an equal protection violation) (citing *Dandridge v. Williams*, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970)). As the number of hospitals providing long-term care units continues to proliferate,[8] the legislature may find it necessary to subject hospitals to more comprehensive regulation oriented towards the particular concerns of long-term care patients. Meanwhile, however, this is a matter for the legislative process not the judiciary.[9]

### III.

Accepting the truth of plaintiffs' well-pleaded factual allegations, we conclude that the Act's exemption of hospital-based long-term care units is not devoid of a rational basis. For the foregoing reasons, the district court's order of dismissal is accordingly

AFFIRMED.

---

6. In addition, counsel for the IHCA suggested at oral argument that there would be no duplicative regulation problem because the Hospital Licensing Act specifically excludes from the definition of a covered "hospital" any facility regulated under the Nursing Home Care Reform Act. *See* Ill.Rev.Stat. ch. 111½, ¶ 144(A)(1). *See also* 77 Ill. Adm.Code § 250.2010(c) (excluding "nursing homes" from the definition of "chronic disease hospitals" covered under the Hospital Licensing Act). This argument overlooks the fact that hospitals are in fact presently regulated as a whole, not by sections, areas, wings, or other subdivisions. The IHCA's argument implies that a long-term care "wing" of a hospital could or should be classified as a "nursing home" and regulated solely under the Nursing Home Reform Act, while the remainder of the hospital would continue to be regulated under the Hospital Licensing Act. We do not think the legislature contemplated such a disjointed regulatory framework. In light of the unqualified exclusion of hospitals in section 4151–113(2), we conclude that the Act, by its express terms, exempts long-term care units located within the hospital confines and that the

defendants' consistent interpretation of the provision is not unconstitutional. *Cf. Lackner v. St. Joseph Convalescent Hospital, Inc.*, 106 Cal.App. 3d 542, 165 Cal.Rptr. 198 (1980) (holding that exemption of acute care hospitals from coverage under California's Long-term Care Act does not violate equal protection; also noting that section 1418(a) of the Act expressly covers a distinct part of a hospital that provides long-term care services).

7. *See supra* note 2.

8. Both parties proffer another "perfectly plausible" reason for the hospital exemption: most hospitals in 1979, when the Act was enacted, did not have long-term care units; thus, the legislature did not consider it necessary to regulate hospitals like nursing homes. According to the IHCA, as of 1987, one-third of hospitals in Illinois had long-term care units.

9. Because we affirm the district court's Rule 12(b)(6) dismissal based on the plaintiffs' failure to state a claim, we need not address the standing and sovereign immunity issues.