Michael **LENZ** and Ronald Listl on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**MILWAUKEE COUNTY**, a county corporation, and Milwaukee County Employees' Retirement System, Defendants.

No. 95–C–1261.

United States District Court, E.D. Wisconsin.

April 21, 1997.

DECISION and ORDER

MYRON L. GORDON, District Judge.

On November 24, 1995, the plaintiffs, fifty-six former Milwaukee County employees, all of whom had retired between January 1, 1994, and November 29, 1994, filed a complaint in the circuit court for Milwaukee County against Milwaukee County ["the County"] and the Milwaukee County Pension Board ["the Board"]. The complaint, as amended, alleges that the defendants violated the plaintiffs' constitutional rights by granting additional retirement benefits to employees of the County who retired on or after November 30, 1994. In addition, the amended complaint contains two state law claims.

The County removed this action to federal court on December 13, 1995, on the ground that the case involves a federal question under 42 U.S.C. § 1983 over which this court has original jurisdiction. By decision and order of December 10, 1996, the plaintiffs were permitted to proceed with this case as a class action. The certified class [hereinafter collectively referred to as the "plaintiffs"] consists of no less than 203 former employees of the County who retired between January 1, 1994, and November 29, 1994.

Presently before the court is the defendants' motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. The motion will be granted.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment may be awarded only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c), Federal Rules of Civil

Mark A. Grady, Principal Assistant Corporation Counsel, Milwaukee, for Plaintiffs.

Kenneth J. Dunlap, Milwaukee, for Defendant.

Procedure). A movant may satisfy this burden by presenting specific evidence on a material issue, or by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. Where, as here, the plaintiffs are opposing the motion for summary judgment, they are then obligated to come forward with affirmative evidence supporting their allegations. *Id. See also* Local Rule 6.05(b)(1) and (d).

Local Rule 6.05 outlines the parties' respective obligations with respect to motions for summary judgment; it provides (emphasis added):

(a) **Motion.** The moving papers must include either (1) a stipulation of facts between the parties, or (2) the movant's proposed findings of fact, or (3) a combination of (1) and (2).

(1) The movant must present only the factual propositions upon which there is no genuine issue of material fact and which entitle the movant to judgment as a matter of law, including those going to jurisdiction and venue, to the identity of the parties, and to the background of the dispute.

(2) Factual propositions shall be set out in numbered paragraphs, with the contents of each paragraph limited as far as practicable to a single factual proposition.

(b) **Response.** Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:

(1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number *and must cite evidentiary materials which support the claim that a dispute exists.*

\* \* \* \* \* \*

(d) In deciding a motion for summary judgment, the court will conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

In compliance with Local Rule 6.05(a), the defendants—the movants—filed proposed findings of fact which identified those facts upon which there is no genuine issue. For the most part, the defendants cited evidentiary materials to support their factual propositions. The plaintiffs have filed a response to the defendants' proposed factual findings. However, my examination of the response reveals that it is deficient under Local Rule 6.05(b) as it merely states whether the plaintiffs agree or disagree with a particular proposed finding of fact identified by the defendants. As to the contested findings, the plaintiffs' response fails, with one minor exception, to refer to any evidentiary materials which support their contention that a dispute exists. *See* Local Rule 6.05(b)(1) and (d). Moreover, on the one occasion in which the plaintiffs cite evidentiary material, the evidence relied upon by the plaintiffs does not contradict the defendants' version of the fact at issue. (Defendants' Proposed Findings of Fact ["DPFF"] ¶ 42; Dobbert Aff. ¶ 6; Plaintiffs' Response to Defendants' Proposed Findings of Fact ["PR"] ¶ 42.)

Local Rule 6.05(d) is clear as to the consequences of the failure of the non-movant to submit an appropriate response to a movant's proposed finding of fact: the court may conclude that there is no genuine issue of material issue as to that factual finding. Accordingly, because the plaintiffs have not contested any of the factual findings propounded by the defendants as contemplated under Local Rule 6.05, I am permitted to conclude that the facts, as identified by the defendants in their proposed findings of fact, are undisputed. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–922 (7th Cir.1994). ("We have ... repeatedly upheld the strict enforcement of [local rules regarding summary judgment obligations], sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Based on the above, the undisputed facts are as follows. The plaintiffs are members of a class certified by the court on December 10, 1996, consisting of former employees of the County who retired between January 1, 1994, and November 29, 1994. (Amended

Complaint ¶ 6.) The County is a political subdivision of the state of Wisconsin and the Board is a state-created agency with authority and control over the County's employees' retirement system which was also created by state law. The court has jurisdiction over this matter under 28 U.S.C. § 1331.

The County owned and operated John L. Doyne Hospital ["Doyne"], a public facility, for approximately the past 100 years. (Grady Aff. ¶ 3, Ex. B.) Froedtert Hospital ["Froedtert"], a private facility, has been operated in close proximity to Doyne and as a complimentary facility for approximately the last 30 years. (Id.) Numerous studies performed over the past two decades have concluded that the governance of Doyne should be restructured to increase its independence from County operations. (Id.) Those studies also made recommendations designed to achieve that objective, none of which were pursued prior to October 1994. (Id.) The division of clinical services between Doyne and Froedtert had resulted in two "half hospitals" each of which found it increasingly difficult to compete effectively with other hospitals in the community. (Id.)

Over the several months prior to October 1994, various County officials studied several different possible governance models for Doyne, including a management contract, a lease or sale of its assets to Froedtert, a transfer of Doyne operations to another private corporation and the formation of a new parent corporation over both Doyne and Froedtert. (Id.) In analyzing these alternatives, the County board of supervisors reached the *preliminary* conclusion that the development of a parent hospital corporation for both Doyne and Froedtert was the best of all available options. (Id.) On October 17, 1994, the County board of supervisors recommended the formation of a hospital management group to develop a definitive agreement to combine Froedtert and Doyne under a single parent hospital corporation board. (Id.)

County executive F. Thomas Ament submitted his proposed budget for 1995 to the board of supervisors on October 1, 1994, which provided for the continued operation of Doyne in 1995. (Grady Aff. ¶ 2, Ex. A.) The budget did not recommend that the County discontinue operating Doyne as a County facility. (Id.)

During late October and early November 1994, the hospital management work group met weekly to facilitate the board of supervisor's resolution regarding the formation of a single parent hospital corporation board. On November 30, 1994, the hospital management work group submitted a report to the board of supervisors proposing a definitive agreement between Doyne and Froedtert to implement a combined hospital structure. (Grady Aff. ¶ 4, Ex. C.) The report also noted that employee and labor relations issues would have to be analyzed in greater depth and that the proposed definitive agreement allowed for the flexibility of a sale or lease of all of Doyne's assets to Froedtert as an alternative to forming a combined organization with a single parent corporation board. (Id.)

An early retirement incentive plan was not discussed or proposed by senior management officials with authority to implement the change prior to November 30, 1994. (DPFF ¶¶ 16 and 17; PR ¶¶ 16 and 17.) A specific proposal for an early retirement incentive plan was not seriously considered by the defendants, their agents or employees until March 30, 1995, when Gary Dobbert, the director of human relations for the County, submitted his proposal. (DPFF ¶ 18; PR ¶ 18.) Any statements or representations made by the defendants, their agents or employees prior to November 30, 1994, regarding the possibility of an early retirement incentive being offered in the future were true when made. (DPFF 20; PR ¶ 20.)

The board of supervisors approved the definitive agreement proposed by the hospital management work group on December 15, 1994, by Resolution No. 94–801(a)(a). (Grady Aff. ¶ 5, Ex. D.) The resolution reiterated that one of the issues to be analyzed as part of the agreement was labor relations. (Id.) The resolution directed the hospital management work group to report back to the board of supervisors in March 1995 with a detailed implementation plan. (Id.)

Following the board of supervisor's resolution, Mr. Dobbert had conversations with Thomas Brophy, acting administrator of Doyne, regarding the direction the County was going to take with Doyne and the resultant impact on the hospital's labor force. (Dobbert Aff. ¶ 2.) In late December 1994, Mr. Dobbert began to explore options for reducing the impact on County employees should Doyne be merged with Froedtert in a single parent corporation or its assets sold or leased to Froedtert. (Dobbert Aff. ¶ 3.) Among the options considered by Mr. Dobbert was an early retirement incentive for employees of Doyne. (Id.) In addition, Mr. Dobbert and his staff analyzed various alternative early retirement incentives with different sectors of the County's labor force being eligible and proposals for the addition of various amounts to an employee's current age and/or years of service. (Id.) The first computer analyses were compiled on December 29, 1994.(Id.)

On January 15, 1995, Mr. Dobbert submitted a memorandum to Mr. Ament which detailed a number of options to lessen the impact on County employees from the discontinuance of operations of Doyne as a County facility. (Dobbert Aff. ¶ 4.) One of the options suggested was an early retirement incentive limited to Doyne employees. (Dobbert Aff. ¶ 4, Ex. A .) Mr. Dobbert continued to analyze various options for an early retirement incentive package through March 1995, and employed the services of an outside corporation, William M. Mercer, Inc. ["Mercer"], to assist him in an actuarial and financial analysis of those options. (Dobbert Aff. ¶¶ 5–7.) In a report of March 10, 1995, Mercer submitted an analysis of various options, including the possibility of a "two year" or a "three year" window which would allow employees to add either two or three years to their age or date of service for purposes of calculating their pension benefits. (Dobbert Aff. ¶ 5, Ex. B.) Mercer submitted another analysis on March 17, 1995, in which it analyzed a three year window together with a "Rule of 75" which would allow employees to add three years to their age or years of service and to retire without penalty if the total was 75 or greater. (Dobbert Aff. ¶ 5, Ex. C.)

The hospital management work group submitted its implementation plan to the board of supervisors and to Mr. Ament on March 29, 1995. The plan recommended that the County discontinue its role as a direct provider of medical services and terminate its operation of Doyne effective no later than December 31, 1995, by a sale or lease of Doyne's assets to Froedtert. (Grady Aff. ¶ 7, Ex. F.)

On March 30, 1995, Mr. Dobbert submitted a specific proposal to the board of supervisors and to Mr. Ament which outlined an early retirement incentive to be used to lessen the impact on County employees of the discontinuance of Doyne's operations and to avoid, if possible, any lay-offs of County employees. (Id.) Under Mr. Dobbert's proposal, all County employees, not just employees of Doyne, would be entitled to receive a three year retirement window which would permit them to add three years to their age or date of service for purposes of calculating their pension eligibility and amount. (Id.)

The finance and health committees of the board of supervisors held a joint meeting on April 4, 1995, at which time they approved the implementation plan offered by the hospital management work group. (Grady Aff. ¶ 8, Ex. G.) On April 7, 1995, the pension study commission, which is empowered by state law to review and authorize changes to the County's employees' retirement system, and the personnel committee of the board of supervisors reviewed and approved the proposed early retirement incentive package. (Grady Aff. ¶¶ 9 and 10, Exs. H and I.)

On April 13, 1995, the board of supervisors approved Resolution Nos. 94–801(a)(c) and 94–801(a)(d) which confirmed the hospital management work group's implementation plan and the early retirement incentive package, respectively. (Grady Aff. ¶¶ 11 and 12, Exs. J and K.) Resolution No. 94–801(a)(d), which approved the early retirement incentive package through amendment of General Ordinance 201.24. (Grady Aff.Ex.K, Section 2, p. 6.) The amendment added Section 201.24(4.26) which limited the eligibility for the early retirement incentive package to County employees who file "an application

for retirement benefits or [have] a retirement date, between November 30, 1994 and August 1, 1995 ..... ." (Id.) The resolution also provided that the terms of General Ordinance Section 201.24(4.26) would take effect upon approval by Mr. Ament and the board of supervisors of the "sale or lease of Doyne Hospital, whichever comes first." (Grady Aff. Ex. K, Section 3 p. 7.) The sale of Doyne's assets to Froedtert was accomplished by the board of supervisor's resolution and a sale agreement in December 1995. (Grady Aff. ¶¶ 13 and 14, Exs. L and M.)

The early retirement incentive plan that was ultimately selected was chosen because its cost was acceptable to the County and because it was projected to result in a sufficient number of retirements to create vacancies throughout the County into which Doyne employees not eligible to retire could be relocated without creating an unnecessarily large number of layoffs or unneeded retirements. (Dobbert Aff. ¶ 6.) The eligibility date of November 30, 1994, for the early retirement incentive was selected because that was the first date that a group of Doyne employees was laid off as a result of the sale of Doyne to Froedtert. (Id.) On that date, employees of the data processing department at Doyne were laid off due to a consolidation of those services with Froedtert. (Id.; PR ¶ 42.) Therefore, the defendants believed that selection of this eligibility date would avoid disruption and possible litigation. (Id.)

## II. ANALYSIS

The plaintiffs launch equal protection and due process challenges to the defendants' decision retroactively to include in the early retirement incentive plan County employees who retired between November 30, 1994, and April 14, 1995—the date that General Ordinance Section 201.24(4.26) became law. Specifically, the plaintiffs—County employees who retired between January 1, 1994, and November 29, 1994—allege that General Ordinance Section 201.24(4.26) discriminates against them by excluding them from benefits given to other similarly situated retirees who retired on November 30, 1994, through April 14, 1995. The plaintiffs further assert that the retirement package is based on an arbitrary and unreasonable classification in violation of the equal protection clause of the constitutions of the United States and the state of Wisconsin. The plaintiffs also contend that the defendants' conduct "in dealing with the plaintiffs ... on a different basis than other members of the same class to which [they] belonged" deprives them of property without due process of law.

In addition to these constitutional claims, the plaintiffs' amended complaint sets forth state law claims of misrepresentation and violation of the Board's fiduciary duty. As to the misrepresentation claim, the plaintiffs allege that they were informed prior to April 14, 1995, that there were no planned retirement incentives being considered by the County and that they retired based on such misrepresentations. The fiduciary duty claim consists of allegations that the Board violated such duty when it withheld information from the plaintiffs concerning the defendants' intent to implement the enhanced retirement benefits.

### A. Constitutional Claims

#### 1. Equal Protection

■■■■ In evaluating equal protection challenges to social or economic legislation like that at issue here, the appropriate standard of review under the United States and Wisconsin constitutions is the rational basis test, unless the legislation involves a suspect class or a fundamental right. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985); *U.S. R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–77, 101 S.Ct. 453, 459–61, 66 L.Ed.2d 368 (1980); *Illinois Health Care Ass'n v. Dept. of Public Health,* 879 F.2d 286, 288–89 (7th Cir.1989); *Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis.2d 59, 61 n. 2, 435 N.W.2d 244 (1989). It is undisputed that retirees are not a suspect class. Further, the plaintiffs have not alleged that the challenged classification offends any recognized fundamental right.

In discussing the rational basis test, the court of appeals for the seventh circuit has recognized that

[t]he rational basis test is applied quite deferentially by courts reviewing social and economic legislation. Courts may not arrogate to themselves the prerogative of the legislature in addressing social and economic matters. Rather, "[i]f the court can hypothesize plausible reasons for legislation that are within the legitimate goals of a government, nothing else is required to validate the governmental classification and it does not matter whether the reasons advanced actually motivated the legislative action." *Fritz*, 449 U.S. at 179, 101 S.Ct. at 461–62.

*Illinois Health Care Ass'n*, 879 F.2d at 288–289 (citing *Evans v. City of Chicago*, 873 F.2d 1007, 1016 (7th Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990)). *See also Bence v. City of Milwaukee*, 107 Wis.2d 469, 320 N.W.2d 199 (1982). Social and economic legislation is vulnerable to equal protection challenges only when it is wholly arbitrary. *Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254–55. The party challenging the regulation at issue has the burden of demonstrating that no conceivable legitimate public interest is furthered by the classification. *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 490 (7th Cir.1988) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 465, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981)).

The defendants assert that the purpose of the early retirement incentive package set forth in General Ordinance Section 201.24(4.26) was to create vacancies throughout the County into which Doyne employees not eligible to retire could be relocated. The plaintiffs do not dispute this fact.

Clearly, minimizing the number of County layoffs and lessening the economic impact of County layoffs as a result of the closure of a County operated facility are legitimate governmental interests. Moreover, I find that the classification in General Ordinance Section 201.24(4.26) between employees who retired before November 30, 1994, and those that retired on November 30, 1994, through April 14, 1995, is rationally related to the purpose of reducing the economic effects on County employees related to the closure of Doyne. This is so because the eligibility date of November 30, 1994, represents the date when County employees were first affected by layoffs due to the downsizing or consolidation of Doyne with Froedtert.

The plaintiffs assert, without citation to any authority, that the classification is arbitrary because the eligibility date was chosen, in part, to avoid "disruption or possible litigation." They maintain that avoiding disruption is not a "legitimate County objective." (Plaintiffs' Brief at p. 11.) I disagree. That the defendants' decision to select November 30, 1994, as the eligibility date was also based on the desire of County officials to avoid possible litigation demonstrates that the County was attempting to comply with what it concluded were the requirements of the law as to disparate treatment. Enacting legislation that conforms to the existing legal guidelines is a legitimate governmental purpose.

In sum, because the plaintiffs have failed to establish that no conceivable legitimate public interest is furthered by the classification in General Ordinance Section 201.24(4.26), they have failed to meet their burden on their equal protection claim. *Id.*

#### 2. *Due Process*

The plaintiffs also allege that General Ordinance Section 201.24(4.26) deprives them of property—enhanced retirement benefits—without due process of law. The due process to which the plaintiffs are entitled is substantive rather than procedural. *See Vaden*, 809 F.2d at 364. The standard of review of a substantive due process challenge is essentially the same as the standard applicable to equal protection challenges: "to pass constitutional muster, the ordinance must bear a rational relation to a legitimate governmental interest." *Id.* (citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955)). *See State v. McManus*, 152 Wis.2d 113, 130, 447 N.W.2d 654 (1989).

I have already concluded that the classification created under General Ordinance Section 201.24(4.26) for purposes of determining eligibility for the enhanced retirement benefits is reasonably related to the legitimate purpose of minimizing the economic impact

on County employees due to the closure of Doyne. It flows from such conclusion that the retirement incentive package itself is rationally related to the purpose of reducing the economic consequences resulting from the cessation of County operations at Doyne. Therefore, I find that the defendants are also entitled to judgment on the plaintiffs' substantive due process claim.

### B.  State Law Misrepresentation Claims

#### 1.  Misrepresentation

■ In count one of their amended complaint, the plaintiffs allege that prior to retirement, they were advised that no planned retirement incentives were being considered and that they retired based on those representations which they believed to be true. Because the plaintiffs all retired between January 1, 1994, and November 29, 1994, only the representations made by the defendants, if any, prior to November 30, 1994, are relevant for purposes of the misrepresentation claim. This is so because the decisions of the plaintiffs to retire could not logically have been predicated on statements made after their respective retirement dates.

■ It is unclear from the amended complaint whether the plaintiffs' misrepresentation claim is one of negligent misrepresentation or intentional misrepresentation. Nevertheless, these torts have at least three elements in common: (1) the representations must be of a fact and made by the defendant; (2) the representation of fact must be untrue; and (3) the plaintiff must believe such representation to be true and rely on such representation to his or her detriment. *Whipp v. Iverson,* 43 Wis.2d 166, 169, 168 N.W.2d 201 (1969).

In responding to the defendants' motion for summary judgment, the plaintiffs have not identified a shred of evidence to establish any of the three elements. To the contrary, it is an undisputed fact that an early retirement incentive plan was not discussed or proposed by senior management officials with authority to implement the change prior to November 30, 1994, and that any representations made by the defendants, their agents or employees prior to November 30,

1994, regarding an early retirement benefit plan or the possibility thereof were true when made. In view of these unchallenged facts, the plaintiffs cannot prevail on their misrepresentation claim. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

#### 2.  Fiduciary Duty Claim

■ The plaintiffs also allege that the Board, as trustee of the monies contributed by the County for the County employees' retirement system, had a fiduciary duty to the plaintiffs to act truthfully with the trust monies and that the Board violated that duty when it failed to inform them of its intent to put into effect enhanced retirement benefits. In determining whether the Board violated its fiduciary duty, the parties agree that the court should look to federal case law concerning the fiduciary duty of plan administrators under the Employee's Retirement Income Security Act ["ERISA"] as that law draws much of its content from the common law of trusts. *Varity Corp. v. Howe,* —— U.S. ——, ——, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996).

■ Employers who act as plan sponsors are not acting as fiduciaries when they adopt, modify or terminate retirement plans. *Lockheed Corp. v. Spink,* —— U.S. ——, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) However, when acting as a plan administrator, an employer may be engaged in conduct implicating a fiduciary duty. Materially misleading communications to plan participants regarding plan administration will support a claim for breach of fiduciary duty. *See Peoria Union Stock Yards Co. Retirement Plan v. Pennsylvania Mutual Life Ins. Co.,* 698 F.2d 320, 326 (7th Cir.1983) ("Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in [29 U.S.C. § 11041].").

In *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163 (6th Cir.1988), the court of appeals for the sixth circuit addressed the issue of misrepresentations concerning possible future offerings by an employer who was acting as a plan administrator. The plaintiffs in *Berlin,* persons who retired between December 1, 1980, and June 1, 1982, alleged that their former employer violated its fiduciary duty when it made misrepresentations prior to their retirement concerning the pos-

sibility of increased severance pay benefits which were subsequently offered to later retirees. In determining whether the employer violated its fiduciary duty to the plaintiffs, the court of appeals in *Berlin* held that once "serious consideration" was given by the employer to implementing increased retirement benefits, then the employer was acting as the plan administrator and had a fiduciary duty not to make misrepresentations concerning the proposed benefits. *Id.* at 1164. The appellate court reasoned that any misrepresentation made to potential plan participants after serious consideration was given to the increased benefits could support a claim that the employer violated its fiduciary duty insofar as such misrepresentation could be viewed as a *material* misrepresentation. *Id.* at n. 7.

The court of appeals for the seventh circuit as well as other federal appellate courts have cited *Berlin* with approval. *See Anweiler v. American Electric Power Service Corp.*, 3 F.3d 986, 991 (7th Cir.1993); *Fischer v. Philadelphia Electric Co.*, 96 F.3d 1533 (3rd Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997); *Pocchia v. NYNEX Corp.*, 81 F.3d 275 (2nd Cir.1996); *Wilson v. Southwestern Bell Telephone Co.*, 55 F.3d 399 (8th Cir.1995); *Maez v. Mountain States Telephone and Telegraph, Inc.*, 54 F.3d 1488 (10th Cir.1995); and *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1st Cir.1994). *See also Hockett v. Sun Company, Inc.*, 109 F.3d 1515 (10th Cir.1997).

It is an undisputed fact that serious consideration of the retirement incentive package at issue in this case was not given by the defendants until March 30, 1995. Based on the authority cited above, any representations made by the Board before that date would not have been material. Furthermore, there is no evidence in the record which suggests that the Board made any misrepresentations or improperly withheld information from the plaintiffs concerning the planned retirement benefits. Indeed, the uncontested facts show that any representations made by the defendants, their agents or employees prior to November 30, 1994, concerning the possibility of a retirement incentive package were true when made. The plaintiffs' claim that the Board violated its fiduciary duty when it failed to inform them during the period between January 1, 1994, and November 29, 1994, of its intent to implement a retirement incentive package is without merit.

### III. CONCLUSION

The defendants have established that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law as to all of the plaintiffs' claims. Accordingly, the defendants' motion for summary judgment will be granted. The plaintiffs' action will be dismissed.

### ORDER

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed, with prejudice, and with costs, in favor of the defendants.