**Ronald LISTLE and Michael Lenz, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**MILWAUKEE COUNTY and Milwaukee County Pension Board, Defendants–Appellees.**

No. 97–2168.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1997.

Decided March 11, 1998.

---

Kenneth J. Dunlap (argued), Dunlap &
Associates, Milwaukee, WI, for Plaintiffs–Appellants.

Mark A. Grady, Timothy R. Karaskiewicz
(argued), Office of the Corporation Counsel,
Milwaukee, WI, for Defendants–Appellees.

Before POSNER, Chief Judge, and
ROVNER and DIANE P. WOOD, Circuit
Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

The plaintiffs in this case represent a class of Milwaukee County workers who retired from their jobs in the eleven months before the effective date of an early retirement incentives plan that the county adopted retroactively when it ceased operating a public hospital. The plaintiffs contend that their exclusion from the benefits package deprives them of equal protection of the law, in violation of the Fourteenth Amendment to the United States Constitution and Article I, section 1 of the Wisconsin constitution (*see State ex rel. Sonneborn v. Sylvester*, 26 Wis.2d 43, 132 N.W.2d 249, 252 (1965)).[1] Based on the undisputed facts, we agree with the district court that the county's choice of an effective date for the retirement incentives has a rational basis and that the class members were not deprived of equal protection by virtue of their ineligibility for those incentives. We therefore affirm the grant of summary judgment in favor of the defendants.

## I.

■ The following facts come to us undisputed in all material respects.[2]

In October 1994, the Milwaukee County board of supervisors concluded preliminarily that John L. Doyne Hospital, then owned and operated by the county, should be operated jointly with a nearby private hospital, Froedtert Memorial Lutheran Hospital, under the auspices of a single parent hospital corporation. Doyne, in other words, would no longer be operated by the county. A hospital management work group was commissioned to study the means to implement this goal, and on November 30, 1994, that group proposed an agreement between Doyne and Froedtert that would merge the two hospitals. The board of supervisors approved that agreement on December 15, 1994 and directed the hospital management work group to prepare an implementation plan that addressed, among other issues, labor relations.

Consistent with the board's directive, county staff members considered various ways in which to minimize layoffs and other adverse consequences of the merger to county employees, among them an early retirement incentives package. On April 13, 1995, the board of supervisors adopted a package that would permit all county employees to add three years to their age or dates of service and thus enable those nearing retirement eligibility to retire ahead of schedule without a loss of benefits. Resolution 94–801(a)(d); General Ordinance § 201.24(4.26). The resolution adopting that package became law on the following day, April 14. Eligibility for the incentives was limited to employees who filed "an application for retirement benefits or [have] a retirement date, between November 30, 1994 and August 1, 1995." The incentives plan was to take effect when the county approved either the sale or the lease of Doyne, whichever occurred first.

In December 1995, the board of supervisors approved an agreement pursuant to which the assets of Doyne were sold to Froedtert. County employees who met the eligibility criteria were thus able to avail themselves of early retirement benefits. The members of the plaintiff class, however, each of whom retired between January 1 and November 29, 1994, were ineligible for those benefits notwithstanding the fact that they retired during a period when the county was actively considering the merger of Doyne and Froedtert.[3]

1. Plaintiffs also argued in the district court that the county's actions in adopting the retirement incentive package deprived them of substantive due process and constituted misrepresentation and a breach of fiduciary duty under Wisconsin law. Plaintiffs have not challenged the disposition of these claims.

2. With one exception that we shall note below (*infra* n. 4), the plaintiffs effectively conceded the truth of the facts proposed by the county in the district court by failing to document their challenges with citations to the record. R. 41 ¶¶ 7–9,

1428, 35, 40–41; *Lenz v. Milwaukee County*, 961 F.Supp. 1268, 1270 (E.D.Wis.1997); *see* FED. R.CIV.P. 56(e); E.D. WIS LOCAL RULE 6.05(d); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994).

3. We note, as the district court did, that an early retirement incentives plan was neither discussed nor proposed by senior management officials with the authority to implement such a plan prior to November 30, 1994. *Lenz, supra* n. 2, 961 F.Supp. at 1271.

We emphasize that several key facts concerning the county's retirement incentives plan are conceded. First, the county settled upon the plan ultimately approved by the board of supervisors because it anticipated that the terms of that plan would reduce layoffs of Doyne employees by creating vacancies throughout the county workforce that former Doyne workers not yet able to retire could fill without, on the other hand, burdening the county with the cost of too many early retirements. The eligibility date of November 30, 1994 was specifically selected because on that date a group of Doyne employees had been laid off due to the consolidation of data processing functions by Doyne and Froedtert. This was the first occasion on which Doyne employees lost their jobs in anticipation of the merger of the two hospitals. The county therefore believed that extending eligibility back to that date would both avoid disruption and fend off possible litigation.[4]

The district court concluded that the eligibility date survived rational basis scrutiny, because it served appropriate governmental aims:

> Clearly, minimizing the number of County layoffs and lessening the economic impact of County layoffs as a result of the closure of a County operated facility are legitimate governmental interests. Moreover, I find that the classification in General Ordinance Section 201.24(4.26) between employees who retired before November 30, 1994, and those that retired on November 30, 1994 through April 14, 1995 [the date that the ordinance became law], is rationally related to the purpose of reducing the economic effects on County employees related to the closure of Doyne. This is so because the eligibility date of November 30, 1994, represents the date when County employees were first affected by layoffs due to the downsizing or consolidation of Doyne with Froedtert.

*Lenz v. Milwaukee County*, 961 F.Supp. 1268, 1274 (E.D.Wis.1997). For these reasons, the court concluded that the county and its pension board were entitled to summary judgment on the plaintiffs' federal and state equal protection claims.

## II.

■ Our review of the district court's decision to grant summary judgment in favor of the defendants is, of course, de novo. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir.1997). As we have noted, the material facts of this case are not disputed. The sole question before us is whether the county's decision to extend eligibility for the early retirement incentives only as far back as November 30, 1994, amounts to a violation of the equal protection clause of the Fourteenth Amendment and the corresponding provision of the Wisconsin constitution. We conclude that it does not.

■ The legislation at issue in this case is of an economic character, and it draws no lines based on suspect classifications or which infringe upon a fundamental constitutional right. We therefore examine the distinction that the county has drawn, between those who retired prior to November 30, 1994 and those who retired on or after that date, to determine whether that distinction is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). Rational basis review "is the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *City of Dallas v. Stanglin*, 490 U.S. 19, 26, 109 S.Ct. 1591, 1596, 104 L.Ed.2d 18 (1989). It affords state and local governments leeway to draw imprecise lines that may result in some inequity. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911); *see also Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517; *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Indeed, "in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Dukes*,

---

4. That the county was concerned about disruption and litigation was the one fact that the plaintiffs properly proposed and documented below in response to the defendants' statement of undisputed facts. R. 41 ¶ 42. Like the district court, however, we in no way perceive this fact as inconsistent with the notion that the county was trying to minimize the layoffs among Doyne employees that began on November 30, 1994. *Lenz, supra*, 961 F.Supp. at 1270.

427 U.S. at 303–04, 96 S.Ct. at 2517. Our review is at an end once we determine that there are "'plausible reasons'" for the challenged classification. *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993), quoting *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).[5]

There can be no serious doubt that the county adopted the early retirement incentives in furtherance of a legitimate governmental interest. We need look no further than the face of Resolution 94–801(a)(d) to see that the purpose of the retirement incentives and the other actions approved by the resolution was "to minimize the number of employees laid off as a result of the discontinuance of Doyne Hospital operations, with an ultimate goal of 'NO LAYOFFS[ ]'...." R. 38 Ex. K at 4. Early retirement incentives are by now a familiar means of avoiding or minimizing involuntary lay-offs in the context of corporate and governmental down-sizing. At argument, the plaintiffs' counsel baldly asserted that it is never legitimate for the government to "give away" its tax revenues. A cynical eye could of course see a great number of governmental expenditures as "give-aways," and plaintiffs have made no effort whatsoever to demonstrate that the retirement incentives at issue here are in any way improper. On the contrary, as a member of the panel pointed out at argument, the thrust of the plaintiffs' claim is not that the county should have "given away" no money, but that it should have given away more by defining eligibility for the benefits more broadly to include the plaintiffs and the other members of the class.

The undisputed facts also foreclose any debate about the rationality of the November 30, 1994 eligibility date. A key purpose of the retirement incentives, after all, was to create job openings for those who would otherwise be thrown out of work by the merger of the two hospitals. The need for those openings most demonstrably arose on November 30, when the first group of Doyne employees lost their jobs to the merger. Commensurately, any retirements that oc-

curred on or after that date necessarily ameliorated the effects of the merger by making vacancies available to the displaced employees of Doyne. It is true, as the plaintiffs emphasize, that the retirement incentives were not adopted by the county until April 1995, more than five months later; moreover, so far as the record reveals, the county was not even considering a retirement incentive package as of November 30, 1994. So employees who retired between that date and the adoption of the benefits package the following April presumably did so without any expectation that they would be entitled to those benefits; they needed no retroactive "incentive" to do what they had already done. Yet, their retirements arguably helped the employees of Doyne no less than the retirements that occurred after the county adopted the incentives package. Presumably for that reason the county feared that it might have a lawsuit on its hands if it did not permit employees who retired between November 30, 1994 and April 14, 1995 (when the resolution approving the benefits package became law) to avail themselves of the enhanced retirement benefits.

This is just the type of line-drawing that governments do every day. Certainly the line could have been drawn differently, and possibly more fairly. But the only inquiry that we are charged with answering is whether the line actually drawn is invidious or wholly arbitrary. The plaintiffs have done nothing to show that it was, beyond insisting that the members of the class are identically situated with the persons who retired between November 30, 1994 and April 14, 1995. Their insistence stubbornly overlooks the Doyne layoffs that began on November 30, creating the need for vacancies elsewhere in the county workforce. Like the class members, the workers who decided to retire between November 30 and April 14 did so without the lure of the incentive package. But the retirements of the latter group of employees were of much more immediate benefit to the workers displaced by the Doyne–Froedtert merger, as we have discussed. In *that* respect, the people who re-

---

5. The analysis under the Wisconsin constitution does not differ materially. *See In re K.C.,* 142

Wis.2d 906, 420 N.W.2d 37, 40 (1988):

tired between November 30 and April 14 were situated similarly to the employees who retired on or after April 14—the employees for whom the benefits package was truly an "incentive." The county could therefore plausibly believe—as the agreed-upon facts posit that it did—that the eligibility for the incentives package should be extended retroactively to November 30, and that if it were not, the November–April retirees might sue.

The plaintiffs postulate a number of other reasons why the county might have extended the incentives to a group of people who had already retired (but not to the class), pooh-poohing the notion that the county was really concerned about the possibility of disruption and litigation. Those suggestions ignore the facts that the parties have agreed upon. They also overlook the essence of rational basis review, which focuses on plausibility rather than actuality. *See, e.g., Heller v. Doe by Doe,* 509 U.S. 312, 320–21, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993); *Fritz,* 449 U.S. at 179, 101 S.Ct. at 461. This suit alone demonstrates the plausibility of the county's professed concern for litigation, and the layoffs that intervened between the retirements of the class members and the retirements of workers made eligible for the incentives package dispel any questions about the rationality of the November 30 eligibility date.

### III.

It is patently clear from the facts to which the plaintiffs themselves agreed that the eligibility criteria for the retirement incentives do not violate the equal protection clause of the Fourteenth Amendment or Article I, section 1 of the Wisconsin constitution. We therefore affirm the entry of summary judgment in favor of the county and the county pension board.

■ The defendants have moved for an award of sanctions pursuant to Circuit Rule 38. We agree that the appeal is frivolous. The parameters of rational basis review are well established, and the plaintiffs themselves have paid lip service to them. Yet, they have all but ignored their obligation to demonstrate that the classification they challenge is irrational, as opposed to imperfect. Instead, they have simply speculated as to other considerations that might have motivated the county and suggested that questions of fact remain as to the real reasons for the decision to retroactively grant the early retirement incentives to some retirees but not to the members of the class. *See* Plaintiffs' Br. 15–16. That approach cannot be reconciled with rational basis review as the Supreme Court has articulated it. *See Heller,* 509 U.S. at 320–21, 113 S.Ct. at 2643. With the benefit of the district court's opinion, the plaintiffs could have harbored no reasonable expectation of prevailing in this appeal. Their decision to prosecute the appeal nonetheless amounts to the kind of obstinacy that Rule 38 does not countenance. *E.g., Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 412 (7th Cir.1997); *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.,* 86 F.3d 96, 101 (7th Cir.1996). We therefore grant the appellees' request and order the plaintiffs to pay a sanction of $500 in lieu of the appellees' attorney's fees. *See Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir.1993).

AFFIRMED WITH SANCTIONS.